ADDISON,
*January,*
1838.

Administrator of JOHN NORTH *v.* BARNUM & RICH.

The administrator of an estate cannot be permitted to purchase in an out-standing title to land of which the intestate died seized in fact, claiming title, at least not for his own benefit.

If he do procure a conveyance of such land, the title acquired will enure for the benefit of the estate.

A tenant may repudiate his tenancy, and set up a claim of title in his own right, and if this is made known to the landlord, the term of the statute of limitations then begins.

EJECTMENT, for thirty-three acres of land in Shoreham, being the south part of lot No. 8, in the third division of the right of Jonathan Gates. Plea—Not guilty, and issue to the country.

The defendants were admitted to be in possession of the demanded premises.

Upon the trial in the county court, the plaintiff introduced testimony, tending to show that the plaintiff's intestate went into possession of the south part of lot No. 8, before the year 1790; that, on the 18th January, 1789, Daniel Newton conveyed to John North and Simeon North the north half of said lot, and that on the 29th Dec. 1791, Solomon Barnum deeded the south half of said lot to said John North, who continued in the exclusive possession of said south half, claiming to own it, until his death, in July 1799, and that his widow remained in possession from her husband's death till her marriage to Stephen Barnum, in the December or January following; that on the 4th Dec. 1799, Stephen Barnum took administration upon said John North's estate, and returned to the probate court an inventory of said estate, embracing, as a part of said estate, fifty acres of No. 8, 3d division of Jona. Gates, and immediately took and continued the possession of the demanded premises, to the time of his death, some three years since. The estate of John North was solvent, and the personal property was sufficient for the payment of the debts.

The defendants then offered the record of a deed from John and Simeon North to Comfort Carpenter, of the whole of lot No. 8, dated April 28, 1794, and a mortgage deed from said Carpenter to Ephraim Doolittle, of 75 acres, on the north part of said lot, dated 16th April, 1794, and a decree of foreclosure upon said mortgage deed.

The defendants also offered the record of a judgment in favor of Simeon North, against said Carpenter, and a copy from the town clerk's records of an execution issued thereon, and of a levy of such execution upon the south half of lot No. 8, and a similar judgment and levy, in favor of John North, upon the north half, the former of which was objected to, on the ground that the officer's return on the execution was not signed, nor the execution nor return thereon recorded in the office of the clerk from which it issued. The county court overruled the objection, and admitted the record and execution.

Addison,
January,
1838.

Admr. of
John North
v.
Barnum &
Rich.

The defendants then offered a quit-claim deed, from Simeon North to Stephen Barnum, dated March 21st, 1806, of forty acres on the south side of lot No. 8, and a deed of thirty three and a half acres, of the south part of the same lot, from Liberty Newton to Stephen Barnum, dated 19th June, 1801.

The plaintiff introduced testimony, tending to show that Carpenter never took possession of the land conveyed to him by the Norths, and that John North remained still in possession, repudiating the deed to Carpenter as fraudulent.

Witnesses were offered by the plaintiff, to prove that a court of inquiry was held upon said Carpenter, on a charge for forgery of a note, connected with the purchase of said land from the Norths, and that Carpenter was bound over for trial upon said charge. But the county court excluded the testimony.

It was also in proof, that Simeon North never took possession under the levy of his execution against Carpenter. The plaintiffs introduced testimony, tending to prove that Liberty Newton never possessed nor claimed any part of the land in question, but that the land he occupied and claimed was adjoining to this land on the south. There was also a deed from Jordon Post to John North, of lot No. 8, dated Sept. 9, 1798.

The plaintiffs insisted, that the deed from Simeon North to S. Barnum, must enure to the benefit of the estate of John North, but the court decided, that as John North had parted with his title by the deed to Carpenter, Stephen Barnum, notwithstanding the relation he stood in to the estate of John North, had a right to derive a title to the land in question, from Carpenter, and to hold the land in his own right; that

although the return of the officer, on the original execution, did not appear to be signed by him, yet, as the proceedings appeared regular on the town records, it was not competent for the plaintiff to impeach the proceedings, as against a *bona fide* purchaser, as the tendency of such impeachment would be to show the title still subsisting in Carpenter, and not in his intestate, and therefore, for the purposes of this suit, the effect was the same as if the said levy had been in all respects regular ; and that by the deed from Simeon North to Stephen Barnum, of the 21st of March, 1806, Stephen Barnum acquired said North's title to the land in question, in his own right, which he might hold to the exclusion of the heirs or representatives of John North.

The defendants further produced deeds of gift of the land in question, from Stephen Barnum to several of his children, and all reserving to the said Stephen Barnum the use of the land during his natural life, and a deed from one of the children of said Stephen, executed since his death, to Rich, one of the defendants, of the greater part of the land in question.

The plaintiff then offered testimony, tending to prove that Rich, previous to taking his deed, had notice that the widow of North, who was also the widow of Stephen Barnum, claimed dower in the land, but whether as widow of North or Barnum did not appear, which the county court held to be unimportant.

The county court decided that the inventory of the estate of John North, exhibited by Barnum to the probate court, did not estop him from purchasing the land in question, because as John North had, at that time, by virtue of his levy against Carpenter, an equity of redemption in the *north half* of said lot, Doolittle not having then foreclosed, that half was to be supposed to be intended by the inventory.

Verdict for the defendants, and exceptions by the plaintiff.

*H. Seymour* and *U. H. Everest* for plaintiffs.

*C. Linsley*, for defendant.

The opinion of the Court was delivered by

REDFIELD, J.—In regard to the deed from John North to Comfort Carpenter, in the year 1794, it no doubt left North standing in the relation of tenant by sufferance to Carpenter. The testimony offered by plaintiff, to show that deed fraudulent, goes no farther than to show that North claimed it to

ADDISON,
January,
1838.

Admr. of
John North
v.
Barnum &
Rich.

have been fraudulent. The testimony, in relation to Carpenter's arrest for forgery, is wholly inadmissible. This claim, accompanied with notorious acts of ownership, continued through a succession of years, and Carpenter asserting no claim, would be testimony from which a jury might infer that Carpenter had knowledge that North's possession was adverse to his, and in his own right. If so, the statute of limitations would begin to operate, and if Stephen Barnum went into possession of the land, as the administrator of North, and so continued, until the final settlement of the estate, in 1811, the title by the statute of limitations would become perfected in the heirs or estate of North. For it is well settled that a *tenant*, even, may repudiate his tenancy, and set up an adverse claim in his own right, and if this is made known to the landlord, the term of the statute of limitations begins from that time. *Willison* v. *Watkins*, 3 Peters' R. 43, *Greeno* v. *Munson & Munson*, 9 Vt. 37.

We have no hesitation in saying, that Barnum, by becoming the administrator of John North, did preclude himself from acquiring title, in his own right, to any portion of the estate of which North died seized, of which the land in controversy was a portion. And we think that the fact, that he inventoried fifty acres of lot numbered eight, as belonging to that estate, in connexion with the fact, that John North was, at the time of his death, in possession of fifty acres, the south half, and being the land in controversy, goes conclusively to show, that Barnum did not, at that time, expect or intend to acquire title in his own right. John North levying his execution against Carpenter, upon the north half of the lot, would not show that he intended to look to that land for his redress, instead of the south half; nor would it estop him from disputing Carpenter's title to this land. The Norths levied, each upon the other's land, no doubt, in order to avoid the estoppel in law, and at the same time, exhaust any *possible* title which might be in Carpenter.

The possession of Barnum would be in trust, for those interested in the estate of John North. In that view, title acquired by such possession, or by purchase, would enure for the benefit of the estate. Thus the title derived from Simeon North cannot avail him or his heirs, or their assign-

ADDISON,
January.
1838.

Admr. of
John North
*v.* &
Barnum &
Rich.

ces, the defendants, but must enure for the benefit of the estate of John North. And that deed being without consideration, connected with the other circumstances in the transaction above named, will show conclusively, that such was the understanding of the parties at the date of the deed.

It is not necessary to decide on the legality of those levies. They would seem to be incurably defective. The officer's return not being signed by him, on the original execution, and neither the execution or the return being recorded in the office of the clerk from which it issued, would seem to render the whole proceedings a nullity. But this, as was considered by the court below, is not important.

In the year 1811, when Barnum closed his administration account, the title to the land in controversy had become perfect in the estate of John North. Barnum was then in possession, as trustee for that estate, and, so far as appears from the case, acknowledging the title of the estate.

Whether he has acquired title since that time, does not appear. That after his relation of trustee had ceased, he might acquire title by the statute of limitations, the heirs being of full age, is perhaps consistent with the doctrine of the case of *Willison* v. *Watkins*.

Judgment reversed.