THE SOCIETY FOR THE PROPAGATION OF THE GOSPEL IN FOREIGN PARTS *v.* THE TOWN OF SHARON, WILLIAM HAYDEN AND ELI HAYDEN.

*Adverse possession. Notice of repudiation of tenancy under a perpetual lease at nominal rent.*

A title to lands granted to the society for the propagation of the Gospel in foreign parts can be acquired by fifteen years adverse occupancy, since the passage

of the act of 1832, (Laws of 1832, p. 4, Thomps. Comp. 57,) repealing all acts exempting persons beyónd seas from the operation of the statute of limitations.

The occupancy of a person in possession at the time of the passage of that act, under a warranty deed from a person who derived his title by a perpetual lease from a town claiming and acting under the law of 1794, directing the appropriation of the lands granted to that society, was a possession adverse to the title of the society, even though he might, notwithstanding his warranty deed, have been estopped from setting up any title adverse to the town.

A conveyance of real estate, with covenants of warranty, to a person, his heirs and assigns, as long as wood grows and water runs, in the form of a lease, but reserving only a nominal rent if demanded, and without reserving any right of re-entry, is, in effect, a conveyance of the fee; and does not create such a tenancy as, upon a repudiation of it, would require notice to be given to the grantor. The object of a notice of the repudiation of a tenancy being required is to enable a landlord to protect his rights; but under such a conveyance, the conveyor would have no rights to protect.

EJECTMENT for lands in Sharon. In the writ which was dated January 30th, 1852, the plaintiffs were described as "the society for the propagation of the Gospel in foreign parts, a corporation duly established in England, within the dominions of the Queen of the United Kingdom of Great Britain and Ireland, the members of which society are aliens, and subjects of said Queen."

Plea, not guilty; trial by jury, May Term, 1855,—UNDERWOOD J., presiding.

The plaintiffs read in evidence the charter of the town of Sharon, dated August 17, 1761 ; the records of the proprietors of said Sharon, by which it appeared that the land in controversy had been, in the division of said town, duly allotted and assigned to the plaintiffs ; an act entitled " an act directing the appropriation of lands in this state, heretofore granted by the British government to the society for the propagation of the Gospel in foreign parts," passed October 30th, 1794 ; and the following conveyances of said premises, viz., certified copies of a lease from the selectmen of Sharon, to Larkin Hunter, dated March 8th, 1796 ; a lease from said Hunter and Jason Downer to Samuel Lamphear, dated October 22d, 1800 ; a warranty deed from Samuel Lamphear to Eli Hayden, one of the defendants, dated November 30th, 1816 ; a deed from Eli Hayden to William Hayden, another of the defendants, and a mortgage deed from said William to said Eli, both dated the 14th of July, 1849 ; the record of a power of attorney from the plaintiffs to John A. Pratt, dated November 30th, 1830,

recorded in the town clerk's office, in said Sharon, December 20th, 1852, and a lease executed by said Pratt, as attorney of the plaintiffs, to the town of Sharon, dated September 12th, 1840, on which lease was the endorsement of said Pratt as such attorney, as hereinafter set forth.

It appeared in evidence that said Hunter took possession of said land under his lease, before 1800 ; and occupied the land under it till he deeded to said Lamphear ; and said Lamphear, after the lease to him, occupied the land until 1816, when he deeded to said Eli Hayden, and said Eli occupied the land, under his deed, until July 14th, 1849, when he conveyed to said William Hayden, since which time said Eli and William had occupied the land, up to the commencement of the suit.

It further appeared in evidence, that in 1833, (it being understood by said town of Sharon, that said Pratt, as agent and attorney of the plaintiffs, was making claim to said land,) said town, at the March meeting of 1833, appointed Chester Baxter, William Steele and Luther Fay, a committee to confer with said Pratt in relation to the same; that some time previous to March, 1835, said committee did confer with Pratt; and said William Steele, called by the defendants, testified : "Pratt appeared as agent of the society, clothed with power to settle, as he said; and fixed on a sum of money to answer for all rents due and to become due. We accepted of the proposition, and gave our note for the full amount, and reported our doings verbally to the town. The town accepted of it; the sum fixed on was $300 and the back rents. We gave the note before we reported to the town. Pratt agreed we should have a durable lease. We were to have the land free of all rents." Cross-examination,—"I dont know whether Pratt showed his power of attorney, I dont recollect," and on re-examination, "no particular form of conveyance was agreed on, it was to be a quitclaim, a clear title, clear from all claims for rent." And on further cross-examination he testified, "the town voted to accept our report and pay our note." This was all the testimony relative to the terms of said settlement, which was given, or of the agents' knowledge of the extent of Pratt's agency.

It appeared that afterwards, in 1840, said note was paid in full to Pratt, and thereupon, on the 12th of September, 1840, the said

lease to the town, and said endorsement and receipt thereon, were executed.  Pratt, in his annual returns to the plaintiffs, as their agent, did not charge himself with said back rents, or with $300; but he returned $18, as paid each year, to wit, in 1841, 1842, 1843 and 1844, " by Tyler & Hitchcock," the names of the persons who signed said lease as selectmen of Sharon.

No further evidence was given.  The plaintiffs requested the court to charge the jury, that if they found that the agents of Sharon knew of the extent of Pratt's authority, and found that said authority was as the evidence tended to prove, and that the lease and receipt for rent was pursuant to their agreement, the plaintiffs were entitled to recover.  The court refused so to charge, but decided, upon the above facts and testimony, that the plaintiffs were not entitled to recover, and directed the jury to sign a verdict for the defendants, to which the plaintiffs excepted.

There was no evidence tending to show that Pratt's power or agency was other than that which was conferred on him by his power of attorney.

The charter of the town of Sharon granted " one share for the incorporated society for the propagation of the Gospel in foreign parts."

The lease from the town of Sharon to Larkin Hunter was as follows:

" This indenture made this 8th day of March, 1796, between " the selectmen of the town of Sharon, in the county of Windsor, "and state of Vermont, on the first part, and Larkin Hunter of " the same town, county and state, on the second part, witnesseth : " that the said Selectmen of Sharon, aforesaid, by virtue 'of an act " passed by the legislature at their session at Rutland, October the " 30th day, 1794, intitled an act directing the use of the rights of " land in this state, heretofore granted by the British government, " for the propagation of the Gospel in foreign parts, said selectmen " of the first part, doth covenant in their capacity for themselves " and their successors in office with the said Larkin Hunter, of the " second part, for the consideration hereafter mentioned, to lease to " the said Larkin Hunter the forty acre lot belonging to the propa- " gation right, in the town of Sharon, aforesaid, so long as water " runs and wood grows, in free peaceable possession, to possess for

" himself, his heirs and assigns, on his yielding and paying one bar-
" ley-corn annually, if demanded, and furthermore the said select-
" men of the first part, by virtue of said act, and in behalf of said
" town, have a legal right to lease said land, as aforesaid, and in
" their capacity, do engage to warrant and defend the possession
" aforesaid to the said Larkin Hunter, his heirs and assigns.

" In witness whereof the parties have hereunto set their hands
" and seals this 8th day of March, 1796."

The lease from Hunter & Downer to Lamphear was similar in
form to that of the selectmen of Sharon to Hunter, as above reci-
ted.    The subsequent conveyances to the Haydens were deeds of
bargain and sale of the premises.    The power of attorney to John
A. Pratt, only empowered him to lease, let or demise any of the
lands belonging to the society in the county of Windsor, reserving
annual rents.    His lease to the town of Sharon was for so long as
wood grows and water runs, reserving an annual rent of eighteen
dollars ; and on the back of the lease was the following endorse-
ment or receipt, signed by said Pratt as attorney for the plaintiffs.

" Received of the selectmen of Sharon, four hundred and sev-
" enty-one dollars and ninety cents, which is in full for all the rents
" which are due on the within lease, or which may become due, so
" long as wood grows and water runs."

*A. P. Hunton* and *O. P. Chandler* for the plaintiffs.

The defendants cannot hold the lands discharged from the rents,
by force of the statute of limitations.

The statute did not commence running until the statute was
passed in 1832, repealing the exemption in favor of persons be-
yond seas.    *Prop. Society* v. *Pawlet,* 4 Pet. 480.

The legislature have sanctioned this view of the case by the act
of 1832, repealing the exemption in favor of persons beyond seas.

Slade's Statutes 291, act of 1797 exempts persons beyond seas ;
p. 292, act of 1801 exempts land sequestered to pious uses; the same
exempts such land from all previous statutes ; p. 293, act of 1819
repeals two preceding statutes, so far as relates to the propagation
right ; vol. 2, p. 58, stat. of 1832 repeals exemptions in favor of
persons beyond seas.

In 1840, before the statute had run, since the repeal of the ex-

emption in 1832, Sharon attorns to the plaintiffs by taking the lease from the plaintiffs.

That attornment binds Sharon, and all parties holding under them, whether by lease, sub-lease or deed from their lessees,—for they all stand in the place of Sharon.

If A, having no title, leases land to B, who enters and occupies fifteen years, he thereby acquires title, not for himself, but for his landlord. If, in the meantime, the landlord attorns to, and takes a lease of the real owner, the tenant can afterwards acquire no title either for himself or for his landlord. Not for his landlord, who is estopped by his lease, nor for himself, for his occupation is that of his landlord. *Jackson* v. *Davis*, 5 Cow. 129. *Buswick* v. *Thompson*, 7 Term. 484. *Rennie* v. *Robinson*, 8 Eng. Com. L. 275. *Lord* v. *Bigelow*, 8 Vt. 445.

When a person in possession can hold rightfully in one character, the law will presume that he is holding in that character, and not that he was holding wrongfully and adversely.

Since the attornment by Sharon in 1840, the defendants Hayden could rightfully hold under the plaintiffs, by virtue of their lease to Sharon, for the plaintiffs could not evict them, except for rent, therefore the law will presume they were holding in that character.

The lease was, in fact, intended for their benefit, and it is fair to presume that they acquiesced in it. *Benson* v. *Betts* 8 Wend. 181. *Record* v. *Williams*, 5 U. S. Cond. 242.

The town of Sharon has never been evicted, nor have their lessees, in such manner as to interrupt the relations of tenancy, either as between Sharon and the plaintiffs, or as between Sharon and the other defendants. A conveyance by deed of warranty, by a lessee, only operates as an assignment of the lease by the grantee. *Pingrey* v. *Watkins*, 15 Vt. 479; *Blake* v. *Howe*, 1 Aik. 306; *Bowker* v. *Walker*, 1 Vt. 18; nor did those claiming under Sharon ever surrender the possession or repudiate their tenancy.

But it may be claimed that the lease of 1796, from the selectmen to Hunter, was, in effect, an absolute conveyance, and created no tenancy, and that, therefore, the other defendants could not be affected by the attornment of Sharon, either on account of its being a durable lease or for the smallness of the rent we answer:

1. The statute, under which they were acting, required a reser-

vation of rent to be made in the lease. It does not appear that any other consideration was paid, other than the reservation of the barley-corn. Both parties are supposed to have created this as a sufficient rent to keep within the statute, and it is not for the lessee and those under him to repudiate that character of the transaction. They intended to create a tenancy subject to rent, and they did so in terms, and although in a suit between the parties for the rent, the doctrine " *de minimis*," might apply, yet it should not be applied in the construction of the lease, especially in aid of an unjust defense.

2. It is not true that a perpetual lease, reserving an annual rent, does, in law, amount to an absolute conveyance. In the case of *Arms* v. *Burt*, 1 Vt. 303, and *Stevens* v. *Dewing*, 2 Vt. 411, the leases referred to were, in effect, nothing more than conditional deeds; the parties intended they should have that effect, and the court gave them that construction. They ruled that the words " as long as wood grows" &c., means forever. Had there been a reservation of an annual rent, it would have created a tenancy.

*W. C. French* and *L. B. Peck* for the defendants.

The defendants Hayden hold under a title starting under a conveyance, by the town of Sharon, to Larkin Hunter, March 8th, 1796. That conveyance was in fee, and the claim under it has been continually adverse to the plaintiffs.

The conveyance to Hunter was not a lease, but in fee. It is a lease so long as wood grows and water runs, and that is a fee. *Rood* v. *Willard*, Brayt. 67. *Arms* v. *Burt*,1 Vt. 309. *Stevens Dewing*, 2 Vt. 415.

An estate which may continue forever is an estate in fee. 1 Prest. Est. 419.

The relation of landlord and tenant does not exist between vendor and vendee. *Watkins* v. *Holman*, 16 Pet. 25. *Winterbottom* v. *Ingham*, 7 Ad. & Ell. 611. *Blight's lessees* v. *Rochester*, 7 Wheat. 535.

The relation, then, of landlord and tenant did not exist between the town and Hunter, and his successors, and the Haydens, are not affected by subsequent acts or admissions of the town.

Concessions of a grantor, that he held as tenant, made while in

40

possession even, are never received in evidence against his grantee, who holds by a deed on record, showing him in possession in his own right. Such proof would defeat our registry system. *Carpenter* v. *Hollister*, 13 Vt. 557. *Claremont* v. *Carlton*, 2 N. H. 369. *Hines et al* v. *Soule*, 14 Vt. 105.

The plaintiffs' right is barred by the statute of limitations. The entry and possession of Hunter and those claiming under him, was adverse to the plaintiffs. This was fully settled by the case of the *same plaintiffs* v. *Pawlet et al.*, 4 Pet. 480.

The saving clause in the act of 1797, for persons beyond seas, was repealed in 1832, (Comp. of 1835, p. 58.) And the exemption of lands " given granted or sequestered to pious uses," was repealed in 1819. Slade's Comp. 293.

If the conveyance to Hunter is to be regarded as void, on the ground that no rent is reserved, as required by the act of 1794, the plaintiffs stand in no better position. The town cannot assert any claim to the land as against the Haydens. Their possession has been in their own right, and adverse to the town, as well as to the plaintiffs. They have acquired a title as against everybody. Eli Hayden entered under a warranty deed from Lamphear, dated November 30th, 1816, and has ever since occupied the land under this deed. In 1849, he conveyed to the defendant. His possession was clearly adverse. Perhaps the town might have ejected Hunter within fifteen years after his entry, if the conveyance was void; but they could not have sustained the action after that period, as the fifteen years would commence running on his entry. 8 Johns. 262. 4 Johns. 390. 9 Mass. 508. 15 Mass. 471. 2 Cruise 243, pl. 32.

The opinion of the court was deilvered, at the circuit session in October, by

BENNETT, J. In the opinion we are about to pronounce, we shall only consider those points which we find it necessary to do, to dispose of the cause. It is not to be questioned, at the present day, but what the plaintiffs can maintain this action upon their title, unless, for some good cause, their right has been barred. We will first consider how the plaintiffs' case stands as against the Haydens. The exceptions show that in 1796 the town of Sharon, by

their selectmen, leased this lot of land to one Larkin Hunter, as long as wood grows and water runs, under the act of our legislature, passed in 1794, entitled "an act directing the appropriation of lands, heretofore granted by the British government to the society for the propagation of the Gospel in foreign parts," he yielding and paying one barley-corn annually, if demanded; and that before 1800 Hunter took possesssion under his lease. This was not an entry for the plaintiffs, and in virtue of their title, but was most clearly adverse to it. The town of Sharon claimed the lot as grantees under the state, and not as tenants to the plaintiffs, or as subordinate to their rights, but they claimed a paramount right in exclusion of all right in the plaintiffs. This, then, clearly was an adverse possession, as against the plaintiffs, and so it was considered in the suit in favor of this *same society* v. *The Town of Pawlet and O. Clark,* 4 Pet. 506. Hunter's possession, under his lease, was continued down to the time when he and Jason Downer, in Octotober, 1800, executed a lease of the lot, as long as water runs and wood grows, to Samuel Lamphear, and to his heirs and assigns, he paying or yielding a barley-corn annually, if demanded, and we find that Lamphear occupied the lot, after he took his lease, up to November, 1816, when he conveyed the lot by warranty deed to Eli Hayden ; and he occupied under his deed until July, 1849, when he conveyed the lot to William Hayden, by a warranty deed ; and from that time the two Haydens occupied the lot, up to the time this suit was brought. No question can arise, but what the possession of Eli Hayden was adverse to the title of the plaintiffs. It was under a claim of title not derived from or through the plaintiffs, and it was continued long enough in himself personally, to ripen into a perfect title. Is there anything, then, in this case to prevent the statute from having run in favor of Eli Hayden, upon his own personal adverse possession against the present plaintiffs ? The act of 1797, (Slade's Comp. 289, § 6,) bars any real action for the recovery of lands, tenements or hereditaments, where the cause of action shall have accrued after the passing of the act, unless brought within fifteen years next after the cause of action accrued, and the tenth section of the same act provides, among other things, that it shall not extend to bar persons beyond seas, without any of the United States, if the action shall have been

brought within fifteen years from the time the impediment shall have been removed. In 1801, the legislature passed an act declaring that nothing contained in the act of 1797 should be construed to affect the title of any lands granted, given, sequestered or appropriated for public or pious uses, or lands belonging to the state; and in 1802 they passed a more extended act, declaring that nothing in any statute of limitations, theretofore passed, should be construed to affect any lands granted, given, sequestered, or appropriated to any public, pious, or charitable use, or to any lands belonging to the state. The statute of 1797, with its subsequent modifications, is the governing statute of limitations, so far as the rights of Eli Hayden are concerned, growing out of his own personal adverse possession. The act is prospective in its terms, and the entry of Eli Hayden in 1816, under his deed, was clearly adverse to the title of the plaintiffs, although grants for pious and charitable uses were not excepted from the operation of the act of 1797, in the act itself, yet the acts of 1801 and 1802 create them an exception, so that the act of 1797 would not run against such grants, so long as those acts continued in force. It is not questioned in this case, and could not well be, but what the grants to the society for the propagation of the Gospel in foreign parts, are to be deemed as grants for pious and charitable purposes, within the purview of the acts of 1801 and 1802. So long, then, as those acts were in force, the statute would not run upon the adverse possession of Eli Hayden. In 1819, however, the legislature repealed the acts of 1801 and 1802, so far as they related to the grants of land in this state, to the society for the propagation of the Gospel in foreign parts, and upon the repeal of those acts, the adverse possession of Hayden would cause the statute to commence running in his favor, against the plaintiffs, unless they were saved from the effect of the statute of 1797, by the exceptions contained in the tenth section, as being "beyond seas, without any of the United States." We do not find it necessary, in this case, to express any opinion on the question, whether the plaintiffs were "beyond seas," within the provisions of the exceptions in section 10 of the act of 1797, so as thereby to prevent the statute from running against them. In 1832, the legislature passed an act, most sweeping in its terms, and which enacts, that " every clause or

sentence of any statute of limitations of this state, which exempts, or which might be construed to exempt any person or persons beyond seas, or any person or persons without any of the United States, from the operation of any statute of limitations, be, and the same is hereby repealed." It is clear, then, that unless there is something special in this case to prevent it, the statute would commence running against the plaintiffs, upon the adverse possession of Eli Hayden in 1832, and would ripen into a perfect title after the expiration of fifteen years from that time, and the case shows that he occupied under his deed until the 14th of July, 1849. It is claimed by the plaintiffs' counsel, that the effect of the negotiation between the town of Sharon and John A. Pratt, in relation to this lot of land, and which commenced in 1833, and ended in the execution of a permanent lease of the lot to the town, by Pratt, in virtue of a power of attorney from the plaintiffs, said lease bearing date the 12th of September, 1840, and upon its face reserving certain annual rents, would be to estop the town from setting up an adverse possession against the plaintiffs, or denying their title, and that this estoppel is equally operative against the Haydens.

Though it be assumed that the relation of landlord and tenant, technically existed between the town and Hunter, and also as to Lamphear and his grantees, so that neither of them, in an action by the town, could be permitted to deny the title of the town, yet it is well settled that a tenant may repudiate his tenancy, and claim adverse in his own right against his landlord, and the statute will commence running against the landlord, from the time he has notice of such repudiation of the tenancy. See *Willison* v. *Watkins*, 3 Peters 43. *Geerno* v. *Munson*, 9 Vt. 37. *Administrator of North* v. *Barnum et al.*, 10 Vt. 223. When Lamphear, in 1816, assumed to give to Eli Hayden a warranty deed of this lot, in fee simple, with the usual covenants to secure the title, and Hayden accepted it, and assumed to hold under it, it was, in effect, a repudiation of the tenancy, not only by Lamphear, but also by his grantee Hayden.

Though this may be a full and an unequivocal repudiation of the tenancy, still it may be said, the statute would not run until the landlord had notice of it, and that the case shows no such notice. But suppose the statute would not begin to run against the town,

until notice had been given, can that help the plaintiffs' case? The relation of landlord and tenant never existed between the plaintiffs and the town, at least previous to the lease in 1840, or the plaintiffs and Hayden. Their claims of title were always adverse, and though it should be conceded that Hayden might be estopped from setting up an adverse possession, as against his landlord, until the landlord had notice of the repudiation of the tenancy, still this estoppel would not, as I should apprehend, extend to the plaintiffs, who claimed by a title adverse to that of the town. The case of *Administrator of Hall* v. *The Town of Coventry and F. W. Hammond*, 4 Vt. 295, seems much in point.

The paper title of the plaintiff, in that case, was admitted, and the only question was, whether he was barred of his action by the statute of limitations. The evidence tended to show that for more than fifteen years before suit brought, the possession of the lot had been taken under the town, and the possession of the lot under the town, had been transmitted from one occupant to another, they paying rent to the town, until that part of the lot sued for passed into the occupancy of Hammond, and rents had been paid on it to the town, as one of its public lots. The court charged the jury, if they found an actual possession of the premises demanded, adverse to the plaintiff's title, to have been taken by the defendant Hammond, or those under whom he claimed, and continued more than fifteen years without interruption, before the suit was brought, whether such possession was subject to such supposed right of the town or not, the action was barred. It was claimed in the argument that the possession of Hammond could not avail him personally, because he occupied under the town, and it could not avail the town, regarding him as their tenant, because it was said a town could not acquire a title by an adverse possession. But the court did not adopt the argument of the counsel in either respect. They say, "whether the possession of Hammond for fifteen years shall enure to his benefit, or that of the town, is a matter between him and the town merely, and whether Hammond claimed in his own right or under the town, was immaterial. Either," they say, "was adverse to the plaintiff's title." So it may be said, I think, of Hayden's possession, in the present case.

But from the exceptions it is clear, so far as the plaintiffs are

concerned, at least, that the *adverse* possession of Hayden was in his own right, and not in the character of a tenant, under the plaintiff. He purchased the entire fee of Lamphear, upon a consideration of six hundred dollars, as named in the deed, and took from his vendor an absolute warranty deed, with the common covenants, and entered and occupied under his deed; and no estoppel from his relying upon his adverse possession, in his own right, can be urged against him by the present plaintiffs. If Eli Hayden had a valid title, in his own right, against the present plaintiffs, a good title was conveyed to William Hayden, in July, 1849; and it is to be presumed William Hayden entered under his deed, though this is not expressly stated in the exceptions. I should apprehend the lease from the plaintiffs to the town of Sharon, executed in 1840, could not help the plaintiffs out of their difficulty, although we assume it to be a valid lease, and unaffected by the discharge of Pratt, as the agent of the plaintiffs. Eli Hayden was in the *adverse possession* of the lot, from the time he took possession, under his warranty deed, in 1816, in point of fact, both as to the plaintiffs and the town of Sharon.

Whatever effect this lease may have, as between the plaintiffs and the town, it cannot, I should apprehend, have the effect to create a tenancy between the plaintiffs and Eli Hayden. The town, when the tenancy was first created, and, indeed, up to 1840, stood upon their *adverse right* to the plaintiffs, and all that could be claimed of the tenants, was to attorn to the town, as their landlord, and the town could not compel them to attorn to the plaintiffs. As the defendant Hayden claimed *adverse* to the plaintiffs, and had a right to so claim, from the time he went into possession under his deed, until his claim had ripened into a title, there is no ground to presume he was holding as a tenant to the plaintiffs, and that he acquiesced in the lease to the town, and consented to hold, as tenant to the plaintiffs. Besides, the exceptions expressly find "that he occupied, under his deed, until the 14th of July, 1849." As against the plaintiffs, the Haydens have the better title; and, as it was well said in the case of *Hall's Administrator* v. *Town of Coventry and Hammond,* 4 Vt. 297, whether the possession of the defendant Eli Hayden, for 15 years, shall enure to his benefit, or to that of the town, is a matter between him and the town merely.

So far as the plaintiffs were concerned, it was immaterial whether Eli Hayden claimed in his own right, or under the town. Either would be *adverse* to the title of plaintiffs.

But there are other grounds upon which this case may be put, and which, perhaps, to some, may be the more satisfactory and better ground to rest the case upon. Though the conveyance from the town to Hunter, and from Hunter to Lamphear, may be technically in the form of a lease, yet it is apparent that it was never the intention of the parties to create the substantial relation of landlord and tenant between them, but that the instruments, whatever you please to call them, should, in effect, convey a fee. They run to the lessee, to his heirs and assigns, as long as wood grows and water runs, reserving, as rent, *one barley corn*, annually, if demanded. To all substantial purposes, the leases, if you call them such, conveyed the fee. They are but leases, in form. No rights, or duties, which ordinarily exist between landlord and tenant, are created by them. They are permanent in their character; the lessee is not bound to keep in repair, or surrender up the premises upon any condition whatever; and, in fact, the leases contain a covenant to warrant and defend the possession *to the lessee, and to his heirs and assigns;* and no rent is reserved, for the non-payment of which, an ejectment could be maintained. The barley corn rent is but nominal, and it is only payable *if demanded.* The maxim, *de minimis &c.,* may well apply to the case. If we regard Hunter and Lamphear as strictly tenants, under the town, and that that tenancy was binding upon Hayden, although he entered into possession and had the title by a common warranty deed from Lamphear, yet it is not a case where notice was necessary to the town of the repudiation of the tenancy, by Hayden, in order that the statute might run not only against the plaintiffs, but also against the town. The very object of requiring notice to the landlord is, that he may protect his rights; but to require it where he has no rights to protect, would be a useless ceremony.

The law will not require an idle act to be done. The fact that Hayden purchased the premises in fee, took a warranty deed, and entered into possession under it, and claimed title by reason of it, was a full repudiation of all tenancy under the town, and no notice, in this case, being necessary to the town, the *adverse possession* at

once became *operative* against it, and, as a result, the title became perfect in Hayden before the execution of the lease from the plaintiffs to the town, in 1840, as against the town, and consequently he cannot be affected in his rights, by reason of the town's taking that lease, he not being in any way privy to it; and before this suit was brought, Hayden had acquired, against the plaintiffs, a title by more than fifteen years adverse possession, it having, at all events, commenced in 1832.

The result must be that no recovery can be had against the Haydens, because they have the title; and none against the town, because they were not in possession by themselves, or tenants, when the suit was commenced. In this view it is not necessary to decide what should be the effect of the lease to the town, in 1840, as between the immediate parties to it.

Judgment of the county court is affirmed with costs.