OCEAN FRONT IMPROVEMENT COMPANY

*v.*

OCEAN CITY GARDENS COMPANY et al.

[Submitted February 8th, 1918.   Determined February 19th, 1918.]

1. A lease by riparian commissioners under *4 Comp. Stat. p. 4390 § 21,* conveying all the rights of the state in described tidal lands in perpetuity, subject to payment of rent, with right of entry for forfeiture and option to purchase on full payment, transfers an estate in fee subject to a condition subsequent, consisting of the rent charge.

2. A condition annexed to a conveyance in fee that the grantee shall pay the grantor or his heirs an annual rent and in default the grantor may enter, is a valid condition subsequent.

3. Where the lessee under such an instrument executed a mortgage thereon, *held* that the mortgage was valid, and was in no way disturbed by mortgagor's subsequent conveyance, or the subsequent conversion of the lease into a grant by the vendee of the mortgagor.

On final hearing on bill to quiet title.

This suit is brought under our statute to quiet title to real estate. The claim of complainant is that a certain mortgage which by its terms covers tidal lands now owned by complainant under a grant from the riparian commissioners of this state is not a subsisting lien on the tidal lands. Defendant Security Trust Company, as trustee, is mortgagee of the lands in question; it is claimed by the mortgagee, and also by the several holders of bonds secured by the mortgage, that the mortgage is a valid and subsisting lien on the tidal lands of complainant described in the bill.

At final hearing the jurisdiction of this court to entertain the bill was first determined. The several parties then waived an issue at law and proofs were submitted touching the issue of title as raised by the pleadings.

There is no substantial dispute touching the facts. Complainant is owner of the fee. The mortgage in terms covers the *locus in quo;* it was executed by a predecessor in title of complainant at a time when the tidal lands were held by the mortgagor under a lease from the riparian commissioners. That lease has been since converted into a grant.

The dispute arises from the following facts: June 15th, 1908, the Ocean City Gardens Company was the owner of a tract of land bordering on the Atlantic ocean and also the owner of such rights in the adjacent tidal lands as were conferred by a certain riparian lease which had been made by the riparian commissioners of this state February 27th, 1902. June 15th, 1908, that company executed a mortgage to defendant Security Trust Company on both its upland and the adjacent tidal lands covered by the riparian lease. The mortgage contained a clause which entitled the mortgagor to releases from the lien of the mortgage of any part of the mortgaged property by the payment of a fixed amount per square foot of the land released. October 7th, 1909, the Ocean City Gardens Company conveyed to the West Jersey Investment Company a portion of the upland fronting on the ocean and its rights under the riparian lease in the tidal lands in front of and adjacent to the upland so conveyed. That transaction was as follows: The purchaser paid to the vendor (mortgagor) the full purchase price of the upland, and paid to the vendor in addition thereto the amount which the riparian commissioners were to charge to convert the lease into a grant, the vendor thereupon agreeing to have the lease converted into a grant. To protect the vendee in a perfect title, free from the lien of the mortgage, indemnity security was given by the vendor to the vendee. The vendor then applied for a riparian grant of the tidal land so sold to the investment company, together with a like grant for other tidal land held by the vendor under the same lease. It was then ascertained that the riparian commissioners would not execute a grant except to a person holding title to the *ripa*. Accordingly, the investment company reconveyed the upland to the gardens company for the purpose of facilitating the procurement of the riparian grant.

The riparian grant was then made to the gardens company and thereafter the gardens company reconveyed the upland and tidal lands to the investment company. Subsequently, the gardens company procured from the mortgagee a release of the lien of the mortgage on the upland so reconveyed to the investment company; no release of the lien of the mortgage on the tidal lands was procured. The investment company, apparently in the belief that the mortgage was not a lien on the tidal lands, then surrendered its indemnity.

Subsequently, the investment company conveyed the same upland and tidal lands to the Ocean Front Improvement Company, complainant herein.

*Mr. Lewis Starr,* for the complainant.

*Mr. Thomas E. French,* for the defendant Security Trust Company, trustee.

*Mr. S. Stanger Izard,* for the defendant Ocean City Association.

LEAMING, V. C.

The primary inquiry is to ascertain whether at the time the mortgage was executed the mortgagor enjoyed merely a leasehold estate in the tidal lands with an option of purchase or an estate in fee. If the latter, it will be necessarily conceded that the lien of the mortgage still subsists. If the former, it remains to inquire whether the after-acquired fee, acquired, as it was in effect by the vendee of the mortgagor, enured to the benefit of the mortgagee under a mortgage devoid of covenants of title or quiet enjoyment, and, if so, whether any equity to be relieved of the lien of the mortgage exists in complainant which would not exist in favor of the mortgagor or the investment company.

In three reported cases consideration has been given to the ascertainment of the estate which passes to a lessee under our statutory convertible riparian leases.

The first case was that of *Hudson Tunnel Co.* v. *Attorney-General, 27 ·N. J. Eq. 573.* It was there sought to enjoin certain proceedings then pending for condemnation of tidal lands which were held under a statutory riparian lease; the information charging that the state held a reversionary estate in the leased lands and that the act authorizing the condemnation proceedings denied the right to condemn land which belonged to the state. It was there held that the statutory riparian lease there in question transmitted to the lessee the entire estate of the state, and that no residue of the estate in the lands, such as is essential in an estate in reversion, remained in the state; that the interest which the state had in the land was not an actual estate, but consisted merely in a charge to secure the payment of rent received, by distress and re-entry and taking possession. Accordingly, the lands were held not to be lands belonging to the state, and hence were subject to condemnation.

The next case was *Cook* v. *Bayonne, 80 N. J. Law 596.* It was there again held that the estate transmitted by the statutory riparian lease was an estate in fee, subject only to a rent charge. It, accordingly, was held that the leased tidal lands were properly taxed.

The third case was *Leary* v. *Mayor, &c., of Jersey City, 189 Fed. Rep. 419.* In that case, also, the validity of a tax against tidal lands held under a statutory riparian lease was in question. It was there held that an estate in fee-simple passed to the lessee under the riparian lease on condition subsequent; the condition being that if the annual payments were not made when due the estate could be defeated. On appeal the views there expressed were adopted by the United States circuit court of appeals. *208 Fed. Rep. 854.*

The lease in question here was executed under authority of the act of March 21st, 1871. *4 Comp. Stat. p. 4390 § 21.* Prior to that act the jurisdiction of the riparian commissioners to execute leases and grants of tidal land was limited to certain restricted territory; that act authorized the execution of leases and grants to shore owners in all other parts of the state. The act provides:

"1. That any riparian owner on tide waters in this state who is desirous to obtain a lease, grant or conveyance from the State of New Jersey of any lands under water in front of his lands, may apply to the commissioners appointed under the act to which this is a supplement and the supplements thereto, who may make such lease, grant or conveyance with due regard to the interests of navigation, upon such compensation therefor, to be paid to the State of New Jersey, as shall be determined by said commissioners, which lease, conveyance or grant shall be executed as directed in the act to which this is a supplement and the supplements thereto, and shall vest all the rights of the State in said lands in said lessee or grantee."

"2. That this act shall not interfere with the original act or its supplements as to the waters of the Hudson river, New York bay or Kill Von Kull, easterly of Enyards dock."

The lease in question here varies in form in some respects from what appears to have been the form of the leases considered in the cases above cited. After reciting that the applicant for the lease is shore owner, and the amount determined upon as the purchase price and the amount of annual rental, the instrument proceeds:

"Now therefore, the said State of New Jersey, by the said Riparian Commissioners, the Governor approving, in consideration of the premises and of the rents, covenants and conditions herein contained, does hereby demise, lease and to farm let unto the said The Ocean City Association, its successors and assigns, until default is made in the punctual payment of the annual rentals herein fixed, or until this instrument and all estate or rights arising thereunder has been declared forfeited by said Commissioners or their successors in office, for breach of any of the covenants or conditions herein contained, or until the same has been in any other manner forfeited or terminated, all that certain parcel of land flowed by tidewater" [here follows a specific description of the land], "with the right and privilege, under the covenants and conditions of this grant, to exclude the tidewater from so much of the lands above described as lie under the tidewater, by filling in or otherwise improving the same, and to appropriate the lands under water above described to its and their exclusive private use." * * * "To have and to hold, use, exercise and enjoy, as lessee for the term aforesaid, the said lands and premises, and all the rights and privileges aforesaid, exercisable within and over, and in the manner and form that they are above leased unto The Ocean City Association and to its successors and assigns, subject to the regulations now imposed by law on the exercise of said rights of property hereby leased, and to such as shall hereafter be made by the Legislature or the said Commissioners or a majority thereof, yielding and paying therefor unto the State of New Jersey the annual rent of," &c.

Then follows a covenant of the lessee for the prompt payment of the rent; then a clause authorizing distress for rent in arrears; then a clause authorizing re-entry for non-payment of rent; then a clause that upon such re-entry all covenants of the state shall cease and determine and the lease become null and void; then a clause that, if as a condition precedent, all the rentals are paid on or before the date when the same fall due and all the covenants complied with, a grant will be made on application therefor for any part of the lands free and discharged of any future rent on the payment of the gross sum first named or an equitable part thereof.

From the foregoing it sufficiently appears that the instrument is, in its general structural form, a lease with an option of purchase. The term, however, is without limitation as to time; the limitation of the term, as expressed in the instrument, is an event—the non-payment of rent—and that is an event which may never happen. Nor does the non-payment of rent alone operate to terminate the term; by the terms of the instrument a re-entry is required to effect a forfeiture of the estate conveyed. While the words of conveyance used in the instrument are words appropriate for a leasehold estate, yet the rights which are transferred are all the rights which the state enjoys in the lands and those rights are intended to continue forever unless terminated by the non-payment of rent, followed by re-entry. There is no reversion such as obtains in a lease for a term; the rights conferred by the instrument are to be terminated only by default followed by re-entry, and a right of re-entry is not in any sense a reversion. The instrument, though in name and general form a lease, thus lacks the essential and distinguishing qualities of a lease; in substance, it is a transfer or assignment of the rights of the state in perpetuity on condition subsequent in the nature of a rent charge.

"It is necessary to the relation of landlord and tenant that a reversionary interest remain in the landlord, a conveyance of the landlord's entire term being an assignment rather than a lease. Hence a taking and holding in perpetuity is contradictory of the relation of landlord and tenant." *24 Cyc.* 878.

"A lease is properly a conveyance of any lands or tenements, in consideration of rent or other annual recompense, made for life or years or at will, but always for a less time than the lessor has in the premises." *Wood L. & T.* § *75.*

"A lease is properly a conveyance of any lands or tenements (usually in consideration of rent or other annual recompense) made for life, for years or at will, but always for less time than the lessor hath in the premises; for if it be for the *whole* interest, it is more properly an assignment than a lease." *2 Bl. Com.* § *317.*

"An assignment is properly a transfer or making over to another of the right one has in *any* estate; but it is usually applied to an estate for life or years. And it differs from a lease only in this: that by a lease one grants an interest less than his own, reserving to himself a reversion; in assignments he parts with the whole property, and the assignee stands to all intents and purposes in the place of the assignor." *2 Bl. Com.* § *327.*

In *Leary* v. *Jersey City, supra,* in considering the nature of the riparian lease there in question, the learned trial court said (at *p. 427*) : "By this instrument the state parted with the whole estate as effectually as if the consideration had been paid in one sum. The instrument contemplated two methods of paying the consideration—an annual sum equal to seven per cent. of the entire consideration, as directed by the joint resolution of March 17th, 1870, and a lump sum, at any time at the option of the purchaser, whereupon another conveyance was to be executed and the annual payments cease. The right, title and interest of the purchaser were the same whichever method of payment was adopted. So long as the purchaser made the annual payments, the estate vested in it was as absolute as if the entire capital sum had been paid in the first instance. The use of the words 'lease' and 'rent' does not change the quality of the estate where the whole interest is conveyed. Substance, not form, controls. A lease never conveys all that the owner has. That at some time and by the very terms of the instrument itself the estate shall revert to the lessor, his heirs or assigns, is of the essence of a lease. In the present case, a default in the annual payments causes a forfeiture; but this is not the necessary result of the terms of the conveyance. It provides for such a contingency, but does not require it. The conveyance transferred the whole estate to the purchaser. Only his disregard of the terms can end it and cause a reversion."

A reference to the statute under which the instrument was executed further discloses that it must be understood as transferring all the rights of the state in the tidal lands, subject only to the rent charge; as a statutory instrument it must be given the force and effect prescribed by the statute. That statute, above quoted in full, says:

"Which lease, conveyance or grant shall be executed as directed in the act to which this is a supplement and the supplements thereto, and shall vest all the rights of the state in said lands in said lessee or grantee."

It, therefore, seems impossible to escape the conclusion that the statutory lease here in question, like the leases under consideration in the three cases first above cited, must be deemed operative to vest in the lessee an estate in fee in the tidal lands described, subject to a condition in the nature of a condition subsequent consisting of a rent charge; and the execution of the subsequent grant upon payment of the principal sum on which the rent charge was based must be regarded as merely operative to discharge or release the rent charge. A condition annexed to a conveyance in fee that the grantee shall pay the grantor or his heirs an annual rent, and in default the grantor may enter, has long been recognized as a valid condition subsequent. *Van Rensselaer* v. *Ball, 19 N. Y. 100.*

It follows that as the mortgagor was in enjoyment of an estate in fee-simple in the tidal lands here in question, at the time the mortgage was executed, the lien of that mortgage was in no way disturbed by the subsequent conveyance of the tidal lands by the mortgagor, or by the still subsequent conversion of the so-called lease into a grant by the vendee of the mortgagor.

As the lien of the mortgage is not dependent upon any after-acquired title, it is unnecessary to here consider the other questions which have been argued. I find no equitable rights in complainant as against the mortgagee. Its right to have other parts of the mortgaged premises first sold at foreclosure for its protection is not involved here.

It may be appropriately noted that by act of 1891 (*P. L. 1891 p. 213; Comp. Stat. p. 4396 § 39*) it was declared that the

riparian commissioners should not thereafter be required to execute leases convertible into grants upon payment of the principal sum, but should be privileged to make leases or grants on special terms as to time and manner of payment, and also make leases of limited duration; as already stated, the statutory lease in question here is in perpetuity and in terms convertible upon payment of the principal sum.

I will advise a decree in conformity with the views herein expressed.