UNIVERSITY OF VERMONT AND STATE AGRICULTURAL COLLEGE *v.* WALTER W. WARD.

January Term, 1931.

Present: SLACK, MOULTON, and THOMPSON, JJ., and GRAHAM and SHERBURNE, Supr. JJ.

Opinion filed February 4, 1932.

242

*Morse & Hanford,* of Hardwick, for the defendant.

*H. H. McFarland* and *Theriault & Hunt* for the plaintiff.

THOMPSON, J.   On May 3, 1811, the corporation of the University of Vermont, by an instrument executed by it and Benoni Shaw, did demise, lease, and farm let to Benoni Shaw, his executors, administrators, and assigns, "as long as grass grows or water runs," the westerly half of Lot. No. 29 in the third division of the town of Morristown "laid out, surveyed and set

to the college right in said town.'' (The description of the land as being in the third division was conceded by every one in interest to be a clerical error. The second division was meant.) A yearly rent was reserved, with a provision for reentry in case of nonpayment, and it was also provided that the lessee, for himself, his heirs, executors, administrators, and assigns ''doth hereby further covenant and agree that he, and they, shall and will at all times reserve thirty acres of the premises for woodland without committing strip or waste thereon, taking therefrom yearly such timber as shall be necessary for keeping in repair the buildings necessary for the improvement of the demised premises, and wood for not more than one family thereon, and in case of noncompliance it shall be lawful for the said corporation at any time to reenter and possess the same in as full and ample a manner as in case of nonpayment of rents.''

Through various conveyances the possession of the premises came to Francis Fontaine on November 6, 1915. On February 28, 1917, the latter conveyed the premises by warranty deed to Peter Fontaine. Peter died on January 28, 1919, and his administrator, having first obtained a license to sell from the probate court, on June 11, 1920, conveyed to the defendant all of the growing wood and timber upon the premises, the same to be cut and removed within five years. There was at that time a wood lot of 25⅓ acres upon the land. The defendant entered and cut and removed the timber.·

The declaration contains several counts in trespass *quare clausum fregit;* one in trespass *de bonis asportatis* and one in trover for the timber. The counts in trespass *quare clausum* were withdrawn during the trial. The pleas are the general denial, and special pleas denying damage to the plaintiff's interest in the premises, and alleging a lawful right in the defendant to cut the timber. Issue was joined upon the defendant's general denial; and his special pleas were met by general denial and a replication alleging the conveyance to Benoni Shaw containing the covenant relating to the wood lot, and alleging that the deed of the standing timber to the defendant was in derogation of, and contrary to, its provisions. Trial was by jury, with verdict for the plaintiff, and the defendant excepted.

At the close of the plaintiff's case, and again at the close of all the evidence, the defendant moved for a directed verdict,

and excepted to the denial of it. The ground of the motion which raises the vital question in the case is, that upon the evidence, viewed most favorably for the plaintiff, the plaintiff has no title to or interest in the premises or property, reversionary or possessory, such as entitles it to maintain this action. We proceed at once to the consideration of this point.

It was conceded at the trial below that lot 29 in the second division was allotted as the college lot in the drawing of lots in the town of Morristown, under the reservation in the charter of the town of "one right for the use of a Simonary or College."

The University of Vermont was empowered by its charter, granted by the Legislature, November 2, 1791 (Rev. St. 1787-1791, p. 300), "to take charge of, lease, rent, and improve to the best advantage, all such grants as have been already made by the authority of this state, for the use and benefit of a college."

In 1802 an Act was passed which, after stating the following premise: "Whereas doubts have arisen, whether the corporation of the University of Vermont have a right to appropriate to the use and benefit of such University, the rents and profits of all such lands as have been already granted and reserved for the use and benefit of a college, or for the use and benefit of a seminary or college," empowers the corporation "to take charge of, lease, rent and appropriate to the use and benefit of the University of Vermont, all such lands as have been already granted and reserved, by the authority of this state, for the use and benefit of a college, or for the use and benefit of a seminary or college, and the same to continue until the further order of the Legislature." Acts 1802, Ch. 95, § 1.

In 1810 a further change was made, whereby the corporation was "vested with full power, right and authority to take charge of, lease, rent, and appropriate to the use and benefit of the said University *forever,* all such lands as have been already granted and reserved by the authority of this state, for the use and benefit of a College, or for the use or benefit of a seminary or College." This act also repeals section 1, Acts of 1802, above mentioned. Acts 1810, Ch. 83, § 8. The significant thing in this act is the word "forever," which, in connection with the repeal of section 1 of the Acts of 1802, renders the grant to the University irrevocable.

246

When, in 1865, the University of Vermont and the Vermont Agricultural College were united and constituted a body corporate by the name of the "University of Vermont and State Agricultural College," the trustees thereof were empowered to receive and use "the rents and uses of all such lands as have been heretofore reserved in any charter of land in this State for the use and benefit of any college, and may have the same rights in respect to said lands, and to any leases of the same, and to any rents arising therefrom, that said institutions respectively now have, and may maintain suits in their own name or in the name of such new corporation to recover the same." Acts 1865, No. 83, § 4.

The principal question raised by the defendant's motion for a directed verdict is as to the true character of the instrument of conveyance from the plaintiff to Benoni Shaw which is in form that of a lease, and is hereinafter referred to as a "lease."

The defendant admits that the instrument contains apt words for a lease, with specific rights and duties as between the parties, reserving a substantial and adequate rent payable annually during the whole term of the holding, and authorizing a reentry for the nonpayment of the rent or the nonperformance of the covenants, but claims that because the *habendum* clause is "to have and to hold as long as grass grows or water runs," the lease is equivalent to a conveyance in fee, and is in fact a base or determinable fee, and that the University had the authority and power to convey such a fee.

The term "determinable fee" is used often as synonymous with base fees or with fees upon condition, but at common law the distinction between these three classes of fees was very clear.

A determinable fee is a fee-simple estate to a person and his heirs, with a qualification annexed to it by which it is provided that it must determine whenever the qualification is at an end. Common instances given in the books are a limitation to one and his heirs so long as a certain tree stands, or so long as A and his heirs shall pay B a certain sum per annum, or so long as the property conveyed is used for a certain specified purpose. Such an estate may remain forever, or it may terminate on the happening of the contingency upon which the estate is limited. The possibility of reversion expectant upon such an estate, called the possibility of reverter, is left in the person who

limits it, and in the meantime the whole estate is in the grantee or owner subject only to the possibility of reverter in the grantor. The possibility of reverter is not an estate in land. It is incapable of alienation or devise, but descends to his heirs.

A fee upon condition resembles a determinable fee in that it exhausts the whole estate, but may return to the grantor by breach of a condition subsequent to which it was granted, but it does not return until there has been an entry by the person having that right. The only practical distinction between a right of entry for breach of condition subsequent and a possibility of reverter upon a determinable fee is that in the former the estate in fee does not terminate until entry by the person having the right, while in the latter the estate reverts at once upon the occurrence of the event upon which it is limited. 17 Harvard Law Rev. 297; *Pond* v. *Douglass,* 106 Me. 85, 75 Atl. 320; *Lyford* v. *Laconia,* 75 N. H. 220, 224, 225, 72 Atl. 1085, 22 L. R. A. (N. S.) 1062, 139 A. S. R. 680; *First Universalist Society* v. *Boland,* 155 Mass. 171, 29 N. E. 524, 15 L. R. A. 231; *Institution for Savings* v. *Home for Aged Women,* 244 Mass. 583, 139 N. E. 301; *Slegel* v. *Herbine,* 148 Pa. 236, 23 Atl. 996, 15 L. R. A. 547; *Hart* v. *Lake,* 273 Ill. 60, 112 N. E. 286; *Upington* v. *Corrigan,* 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794; *Nicoll* v. *N. Y. & Erie R. R.,* 12 N. Y. 127.

In each of the above-cited cases there was a conveyance of the fee either upon a condition subsequent or subject to a collateral limitation which might destroy it.

While a base fee at common law was different from a determinable fee or a fee upon condition, it has not, so far as we can ascertain, been recognized in this country. See 17 Harvard Law Review 298.

If the lease in question were to be construed as being equivalent to a conveyance in fee, it would not be a determinable fee because there is no contingency specified in the lease upon the happening of which the estate conveyed would terminate. It would necessarily be a fee on condition subsequent, because after a breach of any of the covenants by the lessee the estate would not terminate until there had been an entry by the lessor.

In the charter of the town of Morristown, as in most of the charters of townships in this State, certain lands were reserved to public uses, *viz.*, one right was reserved "for the use of a

Simonary or College''; one, ''for the use of County Grammar Schools in said State''; and ''lands to the amount of one Right'' were reserved severally for the settlement of a minister ''for the Support of the Social Worship of GOD in said Township,'' and ''for the Support of an English School or Schools in said Township.'' The charter also provided that said ''Two rights for the use of a Simonary or College & for the use of County Grammar Schools * * * and the Improvements, rents, interests & Profits arising therefrom shall be under the Controul, order, direction, & disposal of the General Assembly of said State forever.'' State Papers of Vermont, vol. ii, pages 143, 144, 168, 169.

It was under this reserved power of control, order, direction, and disposal in the charters of the townships that the General Assembly later granted the lands which had been reserved for the use and benefit of a seminary or college to the University with authority and power to take charge of and lease the same forever for the purpose of the grant; and also made similar grants of the lands reserved for the use of county grammar schools to various county grammar schools in the State with authority and power to hold and lease the same for the purpose of the grant. *Trustees of Caledonia County Grammar School* v. *Kent,* 86 Vt. 151, 163, 84 Atl. 26.

It has been held by this Court, whenever the question has been raised, that neither the plaintiff, by its charter, nor the county grammar schools, by their grants, were authorized or empowered to convey the fee in the public lands granted to them, or the whole of their interest and estate therein; that they have only the authority and power to lease said lands by leases reserving a substantial and adequate rent payable annually for the whole term of the holding, and authorizing a reentry for the nonpayment of the same or the nonperformance of the covenants of the lessee. And the same construction has been given to the statutes authorizing selectmen to lease certain of the public lands located in their respective towns.

In *University of Vermont* v. *Reynolds, Exr.,* 3 Vt. 542, 560, 23 A. D. 234, which was an action of ejectment against a person in possession of a right granted for the use of a college, the defendant claimed that a grant would be presumed in support of his title. This Court, when considering this claim, said: ''It

is true that where there exists no power to make a grant, none can be presumed from a possession however long it may be. If it was necessary in this case to presume a deed from the trustees of the University to establish the defendant's claim, it would not be established, as the trustees never had any power to convey by deed.''

In *Trustees of Caledonia County Grammar School* v. *Howard,* 84 Vt. 1, 11, 77 Atl. 877, 880, where the defendant claimed that a grant from the plaintiff should be presumed, this Court said: ''As to presuming a grant from the plaintiff as distinguished from a lease, that cannot be, for the plaintiff had no power to make one.''

In *Bush* v. *Whitney,* 1 D. Chip. 369, the selectmen of the town made a conveyance of glebe land in fee, and the conveyance was held void because the selectmen had only the authority to lease the land.

In *Lampson* v. *Town of New Haven,* 2 Vt. 14, the selectmen of the defendant town executed a conveyance of the glebe lot in the town to the plaintiff for ''as long as water runs and grass grows,'' and received therefor his promissory note for $1,500, payable on or before 100 years from date, and a mortgage on that lot and another lot to secure the payment of the note, the parties believing that on the payment of the note the plaintiff would acquire a good title to the glebe lot. It was held that the conveyance was void because the town could give no title to the glebe land, except by a lease with annual rent as pointed out in the statute.

In *Society for Propagation, etc.* v. *Sharon,* 28 Vt. 603, the lease was to hold ''as long as water runs and wood grows,'' on the yielding and paying a rent of one barley corn annually, if demanded. It was held that the instrument was void as a conveyance in fee, though a lease in form, because a reasonable annual rent, with the right to reenter for the nonpayment of rent, had not been reserved.

In *Trustees of Caledonia County Grammar School* v. *Kent,* 86 Vt. 151, 84 Atl. 26, 28, it was held that the trustees of Caledonia County Grammar School had authority and power only to hold and lease certain public grammar school lands, and that a conveyance of such lands for ''as long as grass grows and water runs,'' in consideration of the payment of a single sum as rent

for all future time, was in legal effect an attempted conveyance of the fee, and, as a conveyance of such public land, it was void. It was also held that the statute authorizing the trustees ''to hold and lease'' the school's lands for its benefit contemplated that the lands should be so leased as to result in a yearly income therefrom for use in support of the school; that a lease of such lands should reserve a rent payable annually, with the right of reentry for nonpayment of the same; and that it is essential to a lease that there be a reservation of a reversion in the grantor, because, where the grantor parts with his whole estate, the instrument is not a lease, but an assignment.

In *Capen's Admr.* v. *Sheldon,* 78 Vt. 39, 47, 61 Atl. 864, 866, this Court said: ''It is true as a general proposition, except as modified by statute, that a conveyance by a trustee, whether to an innocent purchaser or not, and whether in contravention of the trust or not, operates upon the legal title, and vests it in the grantee. But the conveyances in fee of our public lands, when the statute authorizes only leases reserving rent, are void as conveyances.''

In none of the conveyances in the above-mentioned cases was there a reservation of a substantial and adequate rent payable annually during the whole term of the holding, with the right of reentry for the nonpayment of the rent.

The defendant argues that in the cases where it has been held by this Court that a conveyance of our public lands was void, the decision was based upon the ground that the legal effect of the instrument in question was the conveyance of a *fee simple,* and that this was the kind of a fee that was under discussion; that in each case the grantor had parted with his entire present and future interest in the land in question and no beneficial interest remained in the grantor; that under those circumstances it was properly and correctly held that such a conveyance was a perversion of legislative grant and without the power of the grantor to give.

■■ This argument is evidently based upon the theory that, in the case of a grant of a fee on condition subsequent, the whole estate is not conveyed and the grantor retains some interest in the land. This is not so. Every grant of a fee on condition subsequent is a conveyance of a fee simple. The grantor conveys the whole estate, and no interest in the land

remains in him. All that, he has is a mere right to enter on breach of the condition, which entry revests the estate in him. In *Jackson* v. *Schutz*, 18 Johns (N. Y.) 174, 184, 9 A. D. 195, the estate so conveyed is called "a fee simple conditional." Mr. Blackstone (2 Black. Com. 154) says: "But if a man grants an estate in fee-simple, reserving to himself and his heirs a certain rent; and that if such rent be not paid at the time limited, it shall be lawful for him and his heirs to reenter, and to avoid the estate; in this case the grantee and his heirs have an estate upon condition subsequent, which is defeasible if the condition be not strictly performed."

■ It appears clearly from what has been said up to this time, that, when the lease in question was executed, the University had no power or authority to convey a fee of any kind— neither a fee simple absolute nor a fee simple on condition subsequent; and if the lease is in legal effect a conveyance in fee, it is utterly void—neither conveying any title to the grantee, nor affecting the rights of the University. *Bush* v. *Whitney, supra,* 1 D. Chip. page 370.

We now consider the question whether the lease is in legal effect a conveyance in fee because of the perpetuity of the term.

■ It is true, as claimed by the defendant, that the terms "as long as grass grows or water runs," denote perpetuity; and at common law a grant to a man, his heirs and assigns, for "as long as grass grows or water runs" conveys a fee simple. And it may be conceded for the purposes of this case that at common law the lease in question would, in legal effect, be a conveyance in fee.

■ ■ But it cannot be questioned that the Legislature has the power to authorize trustees of the public lands to execute leases of such lands with terms coextensive with the life of the trust, *i.e.,* forever. This power is given to the Legislature by the reservation in the charters of the townships; and, by the provisions of G. L. 1479, that only so much of the common law as is applicable to our local situation and circumstances and is not repugnant to our Constitution and laws is law in this State; and so far only are the courts of this State bound to recognize it. *Nash* v. *Harrington*, 2 Aik. 9, 16 A. D. 672; *LeBarron* v. *LeBarron*, 35 Vt. 365, 367; *Clement* v. *Graham*, 78 Vt. 290, 300, 63 Atl. 146, Ann. Cas. 1913E, 1208.

252

It is a matter of common knowledge, of which we take judicial notice, that from the early days of this State the greater part of our public lands have been leased by "durable leases," that is, by leases reserving a rent payable annually, with a right of reentry for nonpayment of the same, and for the term "as long as grass grows or water runs," or equivalent terms. While there are several different uses for which the public lands have been granted, the trustees who have been authorized by the Legislature "to hold," "to take charge of," or "to take care of," the same, have been granted the power only to lease them for the particular uses specified.

There are three classes of trustees who have been authorized and empowered by the Legislature to lease our public lands; the University, to lease the lands granted for the use and benefit of a college; certain incorporated county grammar schools, to lease the lands granted for the use of county grammar schools; and the selectmen, to lease the lands in their respective towns granted under the authority of the British Government to "the society for the propagation of the gospel in foreign parts," hereinafter called "society lands," and the lands granted under the same authority as glebes for the use of the Church of England, hereinafter called "glebe lands," all of which lands were granted by the Legislature to such towns for the use of schools; lands granted to the use of the ministry or the social worship of God; lands granted to the first settled minister, and not appropriated according to law; and lands granted for the use of the public schools.

Although the University has executed durable leases of the lands granted for the use and benefit of a college for more than one hundred years, this is the first time that one of its leases has been attacked on the ground that because durable in character, it is in effect a conveyance in fee. The statutes hereinbefore mentioned, authorizing it to lease and rent the college lands, do not specify the term for which such lands may be leased. They are silent on that subject.

While the intent of the Legislature as to the length of the term for which the University may execute valid leases of the college lands cannot be ascertained from the language of the statutes authorizing it to lease and rent them, there are other acts passed about the same time authorizing the leasing of

other of the public lands which deal with this subject. These statutes are in *pari materia*, and it is a familiar rule of interpretation that in the construction of a particular statute, all acts relating to the same subject-matter should be read in connection with it, as parts of one system. *Newman* v. *Garfield*, 93 Vt. 16, 104 Atl. 881, 5 A. L. R. 1507; *State* v. *C. V. Ry. Co.*, 81 Vt. 463, 71 Atl. 194, 130 A. S. R. 1065; *Isham* v. *Bennington Iron Co.*, 19 Vt. 230. Another guide to the meaning of a statute is found in the evil which it is designed to remedy; and for this the court may properly look at contemporaneous events, the situation as it existed, and as it was pressed upon the legislative body. *Holy Trinity Church* v. *United States*, 143 U. S. 457, 463, 36 L. ed. 226, 12 Sup. Ct. 511; *Legg* v. *Britton*, 64 Vt. 652, 658, 24 Atl. 1016; *State* v. *Haskell*, 84 Vt. 429, 432, 79 Atl. 852, 34 L. R. A. (N. S.) 286.

An act of the Legislature, passed October 30, 1794, granted the society lands "to the respective towns in which such lands lie," for the use of the schools. The act also provided: "It shall be the duty of the selectmen, in the respective towns, in the name and behalf of such towns, if necessary, to demand, sue for, and recover the possession of such lands, and the same to lease out, *as long as water runs or wood grows;* and annually at farthest, to collect the rents and profits of such lands, and the same pay in to the treasury of such town." 1 Tolman's Compilation, Laws of Vermont, 227.

It appears from the Journal of the Legislature of 1794, pp. 213, 214, that the act, as originally passed, provided that the term of the leases should not exceed fourteen years, but the Governor and Council, after its passage by the House, returned it to that body with an amendment, and a message that the bill was perfectly consonant to the views and wishes of the Governor and Council, except that the lands, so to be appropriated, ought in their opinion rather to be leased on long terms than confined to fourteen years; and recommended to the House to accept the amendment. Thereupon the bill was amended so to provide that the lands might be leased "as long as water runs or wood grows," and passed as amended.

This is one of the first acts of the Legislature providing for the leasing of our public lands on long-term leases, and it is the only act which specifically authorizes and empowers the trus-

tees of such lands to lease the same for "as long as water runs or wood grows," or for equivalent terms.

When the language of this act is read in the light of what appears in the Journal, and of the law that trustees of our public lands have the power only to lease such lands, it is evident that it was the legislative intent that durable leases of such lands created the relation of landlord and tenant between the parties; that they were valid leases "on long terms," and not conveyances in fee.

In *Society for Propagation, etc.* v. *Sharon, supra,* the conveyance in question, which was technically in the form of a durable lease, but was held to be void as an attempted conveyance in fee for the reasons hereinbefore stated, was executed under this Act of 1794. *Bennett,* J., in delivering the opinion of the Court, distinctly intimated that if a substantial rent had been reserved, with right of reentry for nonpayment of the same, or if the instrument had created the relation of landlord and tenant between the parties, it would have stood upon a different ground, and would have received a different consideration.

An Act passed in 1794 authorized selectmen to lease the glebe lands for a term, "not exceeding fourteen years at any one time." This act was repealed in 1799. An Act passed in 1805 authorized selectmen to lease out the glebe lands, according to their best judgment and discretion, reserving an annual rent therefor." 1 Tolman's Compilation, Laws of Vt., 228, 233, 234.

In *Lampson* v. *Town of New Haven, supra,* the instrument in question was executed after the latter enactment. This Court, in holding that as a conveyance in fee of the land, for which it was intended, it was void both upon principle and authority, said: "The town had no other right to these lands, than to lease them out, upon an annual rent, as directed by the statute. * * * In short, the towns have no right to these lands but what is given by the statute, and, if they exercise any right, they must exercise the same according to the statute, or their doings are void." The fact that the conveyance was perpetual in duration was not considered as affecting its validity, because it was a part of the relief decreed that the town should execute "a perpetual lease of the glebe lot, reserving a reasonable annual

rent, with the right to reenter for the nonpayment of rent or for waste committed.''

An Act passed in 1798 (Laws 1798-1801, p. 17) authorized the selectmen of a town to lease out all the lands granted to the use of the ministry or for the social worship of God, ''for a term not exceeding fifteen years, at one and the same time.'' In 1803 this act was amended by authorizing the selectmen to lease these lands ''for any term of time.'' 1 Tolman's Compilation, Laws of Vt., 231, 233. The act was further amended in 1818 (Laws 1818, ch. 16) by authorizing the selectmen ''to take care of and lease out'' these lands. It is stated in the amendatory act of 1803 that the reason for the amendment was because ''limiting the power of the selectmen so that they cannot at any one time, lease such lands for a longer term than fifteen years, is found to be extremely inconvenient and unequal.''

Selectmen have been authorized to lease glebe lands since 1805, and the lands granted to the use of the ministry or for the social worship of God since 1818, without any limit or restriction as to the length of the term, but the lease must reserve rents payable annually. See G. L. 3980-3984.

In *Lemington* v. *Stevens,* 48 Vt. 38, the selectmen of the plaintiff leased the lot granted to the first settled minister, which they were authorized to lease for five years or until a minister should be settled, with other lots that could be leased perpetually for ''as long as wood grows and water runs, *or as we the selectmen have a right to lease the same.*'' It was claimed that the lease was void because it attempted to grant a longer term than the statute allowed. It was held that, since the lawful term was without limit as to a portion of the lots, the alternative clause in the *habendum* had reference to the limitation in the statute as to the ministerial lot. The Court said: ''But we think the alternative in the lease had reference to the limitation in the statute as to this class of lands. And the term was without limit as to a portion of the lots, and as to this lot, it was so long 'as we the selectmen have a right to lease the same.' ''

So far as it has been called to our attention, county grammar schools to whom the lands reserved for grammar schools have been granted by the Legislature; have been authorized to lease

such lands without any limit or restriction as to the length of the term; and, under such authorization, they have executed durable leases of the same.

The claim that a durable lease of our public lands is in legal effect a conveyance in fee, because perpetual in duration, was first made in this Court in *White* v. *Fuller*, 38 Vt. 193. The Court at that time consisted of those eminent jurists, Poland, Pierpont, Kellogg, and Peck. The case was argued twice.

The action was trespass *quare clausum* upon lots 163 and 164 in that part of Eden which had formerly belonged to and formed a part of the town of Belvidere. In the division of the public lands reserved in the charter of Belvidere, separate and distinct portions of lots 163 and 164 were set to the town school right and the Lamoille County Grammar School right, respectively. The selectmen of Belvidere, under the power given to them by statute to "lease" the same, executed a durable lease of the land set to the town school right to the defendant; and the Trustees of the Lamoille County Grammar School, to whom had been granted the public grammar school lands in Lamoille County, with authority "to lease" the same, executed a durable lease of the grammar school lands in those lots to the defendant. The defendant claimed the title to, and the right to possession of, the lands in suit by virtue of these leases. The leases were similar in form to the one in the instant case.

The plaintiff claimed that, as the *habendum* clause of both leases was "to have and to hold as long as grass grows and water runs," the leases were equivalent to conveyances in fee, and that an authority given to the selectmen of Belvidere and the trustees of the Lamoille County Grammar School to execute leases could not be extended to empower them to execute conveyances in fee.

The Court said: "If the real character of these instruments was that of conveyances in fee, they were undoubtedly void. * * * But we do not regard this objection as available to one who is a stranger to the title, and we are not satisfied that such is the legal character of these instruments. We find in each apt words for a lease, creating a tenancy with specific rights and duties as between the parties, reserving a substantial and adequate rent payable annually during the whole term of the holding, and authorizing a re-entry for the non-payment of the

rent or the non-performance of the conditions. * * * The objection to these instruments is that they are for a term equivalent to an estate in fee; but leases of short duration tend to discourage agricultural enterprise and improvement, and, in the case of wild lands, are wholly impracticable, and we are satisfied that the Legislature in conferring the authority 'to lease' such lands had reference to the meaning of that word according to its popular use rather than to its strict technical definition."

The Court said further: "The whole force of this objection to the validity of these leases consists in the fact that they are perpetual in duration; but in the case of *Lampson* v. *Town of New Haven, supra,* this feature of the lease was not considered as at all affecting its validity, because it was a part of the relief decreed in that case that the town should execute 'a *perpetual* lease of the glebe lot, reserving a reasonable annual rent, with the right to re-enter for the non-payment of rent, or for waste committed,' * * * and the previous lease, which was adjudged to be void, was held to be void not on account of its duration, but because it reserved no annually accruing rent, and was intended to be, and was in fact, a sale and conveyance of the fee. Each of the leases now under consideration contain all of the essential features of the lease which was decreed to be executed in that case, and, if either is at all subject to exception, it is only upon grounds which would be equally applicable to that lease."

The Court then concluded: "We have been unable to find any case in which a lease creating a tenancy and reserving an adequate annual rent, with a right of re-entry on the non-payment of the rent or non-performance of other conditions, has been adjudged to be void on account of being perpetual in its duration; and, with the distinct recognition in the case of *Lampson* v. *Town of New Haven* of the validity of such leases, we should be satisfied to hold that even if the objection which the plaintiff takes to the validity of these leases on the ground of their being perpetual in duration was available to or could be asserted by him, it is not well founded, and that both of these instruments were such as the lessors were authorized by statute to execute."

In *Trustees of Caledonia County Grammar School* v. *Kent,* *supra,* this Court, when passing upon the claim of the defendant that, inasmuch as the plaintiff, by its charter, was authorized "to hold and lease" the grammar school lands without any expressed restriction on the power to lease, either as to length of term or amount and kind of rent, a general power was given to be exercised in the discretion of the grantee of the power, said: "It is true that there is no provision in the plaintiff's charter nor by statute expressly specifying the term for which the grammar school lands may be leased, and it was held in *White* v. *Fuller* that a lease of such lands, reserving an annual rent, with a right of re-entry on the non-payment of the rent or non-performance of other conditions, was not, because perpetual in duration, outside the lessor's authority by statute to execute." Nowhere in the opinion is it intimated that a lease like the ones in *White* v. *Fuller, i.e.,* perpetual in duration, is void as an attempted conveyance in fee.

In I Washburn, Real Property (6th ed.), § 611, it is said in discussing terms of leases: "And it was held by the Court of Vermont (*White* v. *Fuller*) that an instrument with the usual features and incidents of a lease, such as reserving rent, with a right of entry for nonpayment of it, or for breach of conditions expressed therein, may be good if properly executed, although in terms creating a perpetual estate in the premises." The author does not criticize nor attempt to distinguish the decision in *White* v. *Fuller,* but treats it as holding that the instruments in that case created the relation of landlord and tenant between parties.

Durable leases, similar to the lease in the instant case, have been involved in the litigation in other cases which have been before this Court. In no case has such a lease been held to be void simply because it was perpetual in duration; and they have always been considered as creating the relation of landlord and tenant between the parties thereto.

*Orleans County Grammar School* v. *Parker,* 25 Vt. 696, was an action of ejectment for certain land in Derby, granted for the support of a county grammar school. The land was granted first to the plaintiff, and it executed a durable lease to the defendant. Later, the Legislature, under a right reserved, granted said land to Derby Academy. The latter procured the defend-

ant to take a durable lease of the same land from it, and the defendant attorned to it and paid rent to it.

One question in the case was the right of the defendant to dispute the plaintiff's title. This Court, in holding that the defendant could show under the general issue that the plaintiff's title had expired, said that though it is a common principle that the tenant cannot dispute the landlord's title, yet, he is permitted to show that it has expired; and in so doing he does not dispute the title, but confesses and avoids it, by matter *ex post facto*.

*Holton* v. *Hassam*, 94 Vt. 324, 111 Atl. 389, was a bill in chancery to establish title to a part of a public lot in the town of Woodbury. The plaintiff. claimed title under a durable lease to said part of the lot executed by the selectmen of the town of Woodbury to one William Barnes on July 2, 1844. In the opinion of the Court, delivered by the late Chief Justice Watson, the following language is used: "For the purpose of showing a leasehold title in Adolphus Holton, the plaintiff introduced in evidence a lease from the selectmen of the town of Woodbury to William M. Barnes, dated the 2d day of March, 1844. * * * * We think such acceptance and retention of the rent was not only a recognition by the town of Holton's possession of the leasehold estate under the Barnes lease, but also of the several successive assignments of that lease, all of which must have been known to the town because recorded in its clerk's office." * * * * "They (the defendants) are also estopped from denying the right of the town to give the Benjamin Ainsworth lease because of the previously executed Burnham lease covering the same land. To hold that they could set up a leasehold title under a lease of earlier date, executed and delivered by the town to a third person under whom * * * they have no standing, would be tantamount to saying that those holding under a lease may deny the lessor's title, a position the mere statement of which shows its unsoundness in principle."

*Willard* v. *Benton*, 57 Vt. 286, is the only case in this jurisdiction which has been called to our attention in which the estate of an assignee of a durable lease of public land is referred to as a "freehold estate." It was claimed that there had been a forfeiture for nonpayment of the annual rent. There was no demand for the rent until it was long overdue. This Court, in

holding that there had not been a forfeiture, called the estate of the defendant, who was an assignee of the lease, a "freehold estate," but it treated the relation of the parties as that of landlord and tenant, and decided the case on the law of landlord and tenant.

The Court, after stating that it is well settled at common law, to entitle a landlord to reentry for breach of covenant to pay rent, he must make demand of the actual rent on the very day that it becomes due, said: "But it has long been well settled both in England and in this country, that where the landlord brings ejectment, or writ of entry for nonpayment of rent, a court of law, without the aid of any statute, will allow the tenant to bring his rent into court, and thus relieve himself from forfeiture. That right in this State is secured by statute. R. L. 1239 [G. L. 2130]."

*Derrick* v. *Luddy*, 64 Vt. 462, 24 Atl. 1050, was an action of general assumpsit to recover rent due under certain perpetual leases of private lands. One Green, who had paid the plaintiff rent while he occupied the leased premises, conveyed them by deed to the defendant and took a mortgage of the same from him. Both the deed and the mortgage stated the premises were subject to a certain annual land rent of twenty dollars payable to the plaintiff. The defendant paid the rent for three years after receiving his deed. He objected to the admission of the deed and mortgage on the ground that rent reserved in a sealed instrument could not be recovered in an action of assumpsit.

This Court, in holding that the plaintiff could recover, applied the law of landlord and tenant that the tenant shall not be permitted to dispute his landlord's title until the tenant has surrendered the possession of the premises to him; that the rule applies to the assignee of the lease as well as to the lessee himself; and the assignee is bound by his assignor's acknowledgment of his tenancy of the premises. The Court said: "By attorning to the plaintiff the defendant in legal effect said to her, 'I acknowledge that these premises belong to you, and that I am occupying them as your tenant at a rental of $20 a year, to be paid at a specified time.' This was equivalent in law to his saying, 'I request you to let me occupy your premises, and, in consideration thereof, I promise to pay you a rent of $20 a year on a specified day.'"

In the report of the trustees of the University to the Legislature in 1804 (Journal, pp. 118, 119) it is stated, referring to the lands granted for the use and benefit of the college: "Of such lands the Trustees have proceeded to lease, at durable leases, all such tracts of land as are exhibited in schedule marked B, which also exhibits the amount of rents reserved on all such leases, the time when annually due, and the amount of rent actually received."

The trustees further said: "In leasing the College lands, the Trustees have thought it prudent to proceed with deliberation, as it is obvious, that when leases are durable, and the rents cannot be raised with the increasing value of the lands, while the towns are new, and but partially inhabited, it cannot be expected that they will command so valuable a rent, or be readily leased to those who would be able to make prompt payments. * * * When leased, the land is considered as the sole security."

It appears clearly from this report that the trustees understood that they were empowered to execute *durable leases* under the authority granted to them by the Legislature. It is equally clear that the Legislature intended that the University might lease the college lands by durable leases, because with full knowledge that it was executing durable leases of such lands, it never disapproved of, nor forbade, the execution of such leases in subsequent legislation concerning the college lands.

The *habendum* in the lease is to "Benoni Shaw, his executors, administrators and assigns," which indicates clearly that the parties did not intend that a fee should be conveyed to Benoni Shaw, but a leasehold estate only. It is true that the covenant of the University for the quiet and peaceable enjoyment of the premises runs to Shaw, "his heirs," etc., but the *habendum* does not.

The defendant argues that where the clear intent and meaning of an instrument is to pass a perpetual right or estate, that meaning is not changed because the word "heirs" is not employed, and that, since the covenants for the payment of rent, and otherwise, are on behalf of the grantee, his heirs, etc., and extend during the whole term, the absence of words of inheritance in the *habendum* does not affect the quality of the estate and make it less than a fee.

■ ■ But it cannot be said that it was the intent and meaning of the parties to the lease that Benoni Shaw should take an estate in fee. The University was prohibited by law from conveying anything but a leasehold estate in the premises conveyed. It is presumed that Benoni Shaw knew the law as to leases of the public lands; and it will not be presumed that the parties intended that the University should convey an estate in the land greater than it had the legal power to convey.

In *Horner* v. *Den ex dem. Leeds,* 25 N. J. Law, 106, 114, where the question was whether an instrument in the form of a lease was a lease or conveyance in fee, the court, in holding that it was a lease, said: "But it is insisted that the *habendum* in this instrument is to Blake and his heirs, and that this must govern the construction, because it is the office of the *habendum* to determine the quantity of the estate granted. Unfortunately, however, for the argument, it is far from being clear that the *habendum* is to the heirs. The words are 'to have and to hold the said privileges unto the said John Blake; his heirs and assigns shall hold and enjoy the said premises without the let or eviction of him the said Jeremiah Leeds,' etc. All the words following the name John Blake belong to the covenants rather than to the *habendum* clause." See *Stark* v. *Mansfield,* 178 Mass. 76, 81, 59 N. E. 643.

It appears from the early statutes authorizing the leasing of our public lands and the Journal of the Legislature of 1794 to which we have called attention, that it was pressed upon the Legislature that leases of such lands on long terms were better adapted to the conditions which then existed than leases of short duration. Those conditions are a matter of common knowledge. The greater part of this State was covered with forests which had little value, if any, as timber. The land had to be cleared before it could be cultivated and made productive. As was said in *White* v. *Fuller, supra,* "leases of short duration tended to discourage agricultural enterprise and improvement, and, in the case of wild lands were wholly impracticable." Settlers would not undertake the arduous task of improving these lands and making them productive unless they could be assured that they and their children would enjoy the fruit of their labors. This result, and a reasonable and adequate rent for the lands, could be secured only by long-term leases.

The various uses for which these lands were granted are perpetual. The titles of the trustees to these lands are indefeasible by the State and are as permanent, absolute, and effective as if the lands had been granted to a man, and his heirs and assigns forever. *Trustees Caledonia County Grammar School* v. *Howard, supra,* 84 Vt., page 11, 77 Atl. 877. But the trustees have the power only to lease such lands. That the Legislature considered that the uses and purposes for which the public lands were granted could be secured best by leases with terms coextensive with the life of the trust, *i.e.,* forever, is apparent from the statutes authorizing the leasing of such lands.

Durable leases of public lands were unknown to the common law. A long-established and well-understood usage, which has received the express recognition and approval of the Legislature and this Court, has sanctioned such conveyances, and a departure from it now would unsettle and probably destroy many titles hitherto believed to be perfectly good. We are not required by any provision of the organic law of this State to adopt a rule of the ancient common law never heretofore applied to them, and subject to its operation a species of tenure unknown to the common law, but adopted early in the legislation of this State as best suited to secure the objects for which such lands were to be held and leased.

As we have pointed out, the statute under which the conveyance in question was made provides only for a lease; the instrument making the conveyance recites on the face of it that it is a lease, and it contains apt words for a lease, with specific rights and duties as between the parties, reserving an adequate annual rent, and authorizing a reentry for the nonpayment of rent or the nonperformance of conditions; and the only power granted under the law to the University is to lease the college lands. Since both our Legislature and this Court have expressly recognized that similar conveyances of our public lands conveyed a leasehold estate, as against the objection that they were perpetual in duration, we have no hesitancy in holding that the effect of this conveyance was to create the relation of landlord and tenant between the parties thereto.

In considering this question we have not been unmindful of the fact that the defendant is a stranger to the title, and the objection he has made to the validity of the conveyance to

Benoni Shaw as a lease is not available to him. But it has been argued with such earnestness that a durable lease of our public lands is in legal effect a conveyance of a base or determinable fee, and so many titles to our public lands are held under such leases, that we have considered the question in the hope that the true character of such leases may be settled for all time.

Two questions raised by the defendant by various exceptions taken during the course of the trial are that the clause in the lease by which Benoni Shaw for himself, his heirs, executors, administrators, and assigns, covenanted and agreed at all times to reserve 30 acres of the premises for woodland without committing strip or waste thereon was so indefinite and uncertain as to render the allocation of such woodland impossible, and that there was therefore no reservation of it; and also that said clause was a covenant on the part of the lessee to the lessor, and was not a reservation, and that the plaintiff cannot recover in an action of tort.

But these objections are not available to the defendant who is a stranger to the title. He does not claim title to the timber under an assignment of the lease, but by virtue of the deed to him from the administrator of Peter Fontaine's estate. Irrespective of the reservation in the lease or any allocation under it, the growing timber was a part of the land. The tenant had the right to enjoy the benefit of the trees while standing and to reasonable estovers, but the administrator had no right to sell them to the defendant to be cut and removed from the land. When the administrator assumed to give the defendant his deed of the growing trees and the defendant accepted it, and assumed to hold under it, it was in effect a repudiation of the tenancy, not only by the administrator but also by the defendant, his grantee. *Society for Propagation, etc.* v. *Sharon,* 28 Vt. 603, 613; *Hadley* v. *Havens,* 24 Vt. 520, 523.

The severance of the trees from the land converted them into personal property. *Fairbanks* v. *Stowe,* 83 Vt. 155, 74 Atl. 1006, 138 A. S. R. 1074; *Deerfield Lumber Co.* v. *Allen,* 89 Vt. 201, 210, 94 Atl. 837. The general property of these trees cut and removed from the leased premises was in the University in whom the fee remained. The law is well settled that under such circumstances the plaintiff can maintain trespass *de bonis asportatis* for the taking of the trees or trover for the

conversion of them, for a general property in a personal chattel draws to it a possession in law. *Gray* v. *Stevens*, 28 Vt. 1, 65 A. D. 216; *Willmarth* v. *Pratt*, 56 Vt. 474; *Cotterill* v. *Hobby*, 4 B. & C. 465, 10 E. C. L. 662; *Ward* v. *Andrews*, 2 Chitty, 636, 18 E. C. L. 823; *Burnett* v. *Thompson*, 51 N. C. 210, 213; *Bulkley* v. *Dolbeare*, 7 Conn. 232.

The defendant offered to show that in 1924 the plaintiff was paid and it accepted the rent which was due under the lease, and also the specified yearly rent in advance to January 1, 1926, on the ground that the only right which the plaintiff had in the premises was to collect the rent, and, if there was a breach of the conditions of the lease, the measure of damages was the diminution in the rental value of the property. The evidence was excluded and the defendant was allowed an exception. It was not error to exclude the evidence. Even if the rule of damages would have been as claimed by the defendant in an action between the plaintiff and a tenant, which we do not decide, the exception is not available to the defendant, a stranger to the title. As to him, the rule of damages is the value of the timber which he cut and removed.

A witness for the plaintiff who knew the location of lot 29 and had been upon the 25⅓ acre wood lot, testified, subject to the exception of the defendant that it was permitting the witness to decide the question in issue, that the wood lot was in the westerly half of lot 29, and that the northerly line of the wood lot and the northerly line of the westerly half of lot 29 were the same. There was no error here, as it was not disputed that the 25⅓ acre lot lay in the westerly half of lot 29.

*Judgment affirmed.*

MOULTON, J. (dissenting). I regret that I cannot agree with the majority in the disposition of this case. It is with all diffidence that I find myself unable to reconcile my views with those of my brethren, whose mature opinion cannot fail to impress upon me the high respect which it deserves and the temerity of a dissent from it. Yet my belief in the unsoundness of their conclusion prompts me to state the reasons for my objection.

We have here an instrument in which it is recited that the plaintiff "for and in consideration of the rents, covenants and

agreements hereinafter mentioned and reserved hath granted, demised, leased and to farm let, and by these presents doth demise, lease and to farm let unto Benoni Shaw, his executors, administrators and assigns a certain tract or parcel of land (describing it). To have and to hold said granted and demised premises unto him, the said Benoni Shaw, his executors, administrators and assigns from the date hereof as long as grass grows or water runs yielding and paying therefor'' a certain rent. It is provided also that if the rent or any part thereof shall be unpaid for the space of 30 days after it becomes due and payable, ''the same being first demanded in writing'' by the grantor, it shall be lawful for the grantor to reenter and repossess the premises. There are three covenants: First, that ''the said Benoni Shaw for himself, his heirs, executors and assigns, doth covenant and agree * * * that he, the said Benoni Shaw, his heirs, executors, administrators or assigns, shall well and truly pay or cause to be paid'' the stipulated rent; second, that the said Benoni Shaw for himself, his heirs, executors and administrators and assigns doth hereby further covenant and agree that he, and they, shall and will at all times reserve 30 acres of the premises for woodland without strip or waste thereon, taking therefrom yearly such timber as may be necessary ''for certain purposes''; third, that the grantor ''doth covenant to and with the said Benoni Shaw, his heirs, executors and assigns that he and each of them quietly and peaceably enjoy the aforesaid premises without any let or hindrance whatever according to the true intent and meaning of these premises.'' There is also a provision for reentry for breach of the covenant regarding the wood lot ''in as full and ample a manner as in the case of nonpayment of rent.'' No reentry has taken place, nor has any written notice of a default been given, as stipulated in the conveyance.

Through various conveyances the property came into the possession of Peter Fontaine. He died while in possession, and his administrator, having first obtained a license from the probate court, sold to the defendant all the growing wood and timber upon the premises. The defendant cut and removed the timber. The declaration in this action contains a count in trover for the timber and one in trespass *de bonis asportatis*.

The primary question is what rights or estate have passed by this conveyance to Benoni Shaw. This involves not only a construction of the instrument itself, but its validity and effect in view of chapter 83, § 8, Laws of 1810, which invested the University of Vermont with "full power, right and authority to take charge of, lease, rent and appropriate to the use and benefit of the University forever" certain lands, among which the premises in issue are included. My associates are of the opinion that the estate thus conveyed is a leasehold, and that the relation of landlord and tenant exists between the grantor and the grantee and the latter's heirs, assigns, etc.

The reasons for this conclusion are that the statute under which the conveyance was made authorizes only a lease; the instrument recites on its face that it is a lease; that it contains apt words for a lease, with specific rights and duties as between the parties, reserving an adequate annual rent, and authorizing a reentry for nonpayment of rent or breach of condition; and that the Legislature and this Court have recognized that similar conveyances of public lands conveyed a leasehold estate, as against the objection that they were perpetual in duration.

I believe and would hold that, regardless of whatever name may have been given to this conveyance, it is in its character and incidents a fee upon condition.

My associates say that "it may be conceded that at common law this instrument is in legal effect a conveyance of the fee." The term "as long as grass grows or water runs" is in perpetuity and extends "as fully beyond the use of the land as the term forever." *Arms* v. *Burt*, 1 Vt. 303, 309, 18 A. D. 680. It "is as near forever as earthly matters can be." *Lampson* v. *New Haven*, 2 Vt. 14, 16. Estates granted for this length of time have been held to be in fee. *Arms* v. *Burt, supra; Lampson* v. *New Haven, supra; Stevens* v. *Dewing*, 2 Vt. 411, 416; *Society for Propagation, etc.* v. *Sharon*, 28 Vt. 603, 606.

Conveyances in perpetuity with reservation of rent and right of reentry for nonpayment are well known at common law. 4 Kent, Comm. (9 ed.) 139, citing Co. Litt. 215, a. b. In fact this form of conveyance is older than the common law, for an analogy, more or less complete, may be found in the emphyteusis of Roman law, which was a conveyance of vectigalian or public lands in perpetuity at a fixed annual rent with a provision for

forfeiture in case of default in payment. Sohm, Institutes (Ledlies'· Translation, 3rd ed.), 348; Hadley, Introduction to Roman law, 199; Maine, Ancient Law, 289-290; Lee, Historical Jurisprudence, 312.

Such conveyances, although often called "perpetual" or (in New York) "manorial leases" are held to pass the fee, the rent being in the nature of a rent charge. *Van Rensselaer* v. *Read,* 26 N. Y. 558, 564; *Van Rensselaer* v. *Ball,* .19 N. Y. 100; *DePeyster* v. *Michael,* 6 N. Y. 467, 497, 57 A. D. 470; *Van Rensselaer* v. *Dennison,* 35 N. Y. 395, 399; *Lynn* v. *Chase,* 5 Barb. (N. Y.) 14, 15; *Kavanaugh* v. *Cohoes, etc., Corp.,* 114 Misc. Rep. 590, 187 N. Y. S. 216, 233 *et seq.* In Pennsylvania, the same result is reached, although the rent is regarded as a rent service, and not a rent charge, because the statute *quia emptores* (18 Edw. 1) is not regarded as a part of the common law of that state. *Hurst* v. *Lithgrow,* 2 Yeates (Pa.) 24, 1 A. D. 326, 327; *Franciscus* v. *Reigart,* 4 Watts (Pa.) 98, 116; *Kenege* v. *Elliott,* 9 Watts (Pa.) 258, 262; *Skerrett* v. *Burd,* 1 Whart (Pa.) 246, 250, 251.

It is said in *Piper* v. *Town of Meredith,* 83 N. H. 107, 139 Atl. 294, 296, 55 A. L. R. 148, that it "is well settled law that a perpetual lease upon condition conveys a fee." In *Penick* v. *Atkinson,* 139 Ga. 649, 77 S. E. 1055, 1057, 46 L. R. A. (N. S.) 284, 286, Ann. Cas. 1914B, 842, this language occurs: "We think that a' perpetual lease is the substantial equivalent of a fee reserving rent. A grant of·land to another reserving a fixed annual rent, with power to enter for the nonpayment of rent, creates a defeasible fee." In *Ocean Front Improvement Co.·* v. *Ocean City Gardens Co.,* 89 N. J. Eq. 18, 103 Atl. 419, 420, a lease so long as a stipulated rent should be paid was held to be in substance a transfer in perpetuity on condition subsequent in the nature of a rent charge, since the instrument, although in name and general form a lease and containing words appropriate for the creation of a leasehold estate, lacked the essential and distinguishing qualities of a lease, there being no reversion, and the term being unlimited as to time, because the 'nonpayment of rent was an event which might never happen. In *Jackson* v. *Schutz,* 18 Johns. (N. Y.) 178, 184, 9 A. D. 195, the instrument was a perpetual lease, and the court said of it: "This is a 'fee simple conditional' at the common law; or a fee

simple subject to be defeated upon a 'condition subsequent,' by the failure or non-performance of which an estate already vested may be defeated." And in *Connecticut Spiritualistic Camp Meeting Ass'n* v. *East Lyme*, 54 Conn. 152, 5 Atl. 849, 850, a lease in perpetuity forfeitable on breach of condition was held to convey a fee and the lessees were to be regarded as owners of the demised premises. In *Scott* v. *Lunt's Admr.*, 7 Pet. 596, 8 L. ed. 797, a conveyance in perpetuity with grant back of an annual rent, with right of reentry for default in payment, was regarded as passing the fee in the land. The grantors in this case, it is interesting to note, were General George Washington and his wife. Other cases to the same effect are *Hudson Tunnel Co.* v. *Attorney General*, 27 N. J. Eq. 573, 578; *Stephenson* v. *Haines*, 16 Ohio St. 478, 486; *Brown* v. *Pierce*, 6 Boyce (29 Del.) 326, 344, 99 Atl. 530, 537.

By whatever name they are called these conveyances are held to operate as assignments and not as leases. 1 Taylor, Landlord and Tenant (9 ed.), para. 50, *Van Rensselaer* v. *Read*, *supra*, 26 N. Y. at page 563; *Van Rensselaer* v. *Dennison*, 35 N. Y. 393, 399. And an assignment is a transfer of the whole property in the estate. *Trustees of Caledonia County Grammar School* v. *Kent*, 86 Vt. 151, 157, 84 Atl. 26.

It is true that there are no words of inheritance in the *habendum* of this conveyance. But this does not preclude the grant of an estate in fee. The doctrine of the common law that the absence of the word "heirs" caused the estate, though expressed to be perpetual in duration, to be one for life only has been from the earliest times in this State considered to be a rule of construction only and not one of positive law. The intention of the parties, as gathered from the instrument taken as a whole, is to govern. All this clearly appears from the exhaustive opinion of the late Mr. Justice Haselton in *Johnson* v. *Barden*, 86 Vt. 19, 20 *et seq.*, 83 Atl. 721, Ann. Cas. 1915A, 1243. See, also, *Blake* v. *Stone et al.*, 27 Vt. 475, 476; *Noyes* v. *Nichols*, 28 Vt. 159; *Collins, Admr.* v. *Lavelle*, 44 Vt. 230, 233; *City of Burlington ex rel. Board of School Commissioners* v. *Mayor of City of Burlington*, 98 Vt. 388, 397, 127 Atl. 892. And as between two constructions equally natural and reasonable, that should be adopted which is most favorable to the grantee. *Huntley* v. *Houghton*, 85 Vt. 200, 204, 81 Atl. 452; *Albee* v.

*Huntley,* 56 Vt. 454, 458; *Adams* v. *Warner,* 23 Vt. 395, 411, 412.

The covenants bind and are for the benefit of the heirs of the grantee, and may be considered in aid of the construction of the instrument. *Bennett* v. *Bennett,* 93 Vt. 316, 318, 107 Atl. 304; *DeGoosh* v. *Baldwin,* 85 Vt. 312, 317, 318, 82 Atl. 182; *Mills* v. *Catlin,* 22 Vt. 98, 104. Taking them in connection with the perpetuity of the grant, it seems clear that the intention was to pass an estate which is, at common law, a fee. It is no answer to the question of intention to say that the grantor intended to convey a leasehold. The thing to be determined is not what name it applied to it, but for what length of time and upon what conditions it intended to alienate. Call it what you will, what the plaintiff intended to do was to convey an estate to last forever, reserving a certain rent and a right of reentry under certain contingencies. The fact that it may have intended that this should be a leasehold has nothing to do with it. The intent must be gathered from the language of the instrument and cannot rest in mental purpose alone. *Clement* v. *Bank of Rutland,* 61 Vt. 298, 304, 17 Atl. 717, 4 L. R. A. 425. Neither can one by intent, merely, attach to a transaction a legal significance or character which in its elements it does not possess. The rights of the grantor are those described in the conveyance, and the intent to have them otherwise cannot add a cubit to their stature.

Mr. Washburn says (1 Washburn, Real Property, 6 ed., para. 162) : "Every estate which may be of perpetual duration is deemed to be a fee, and may come within the definition of Lord Coke of a fee simple absolute, conditional, qualified or base fee." This is not a fee simple absolute because it is subject to a defeasance in the event of a reentry for nonpayment of rent or for breach of covenant. Neither does it fall within the category of a qualified or base fee. It is, I think, a conditional fee, the incidents of which are quite different from those of the estate last mentioned. It is necessary to be precise about this, for the distinction is important.

The words "as long as" in the phrase "as long as grass grows or water runs" constitutes a technical expression by which a limitation is expressed to relate to time. *Board of Chosen Freeholders* v. *Buck,* 70 N. J. Eq. 472, 82 Atl. 418,

420; *Loomis v. G. F. Heublein & Bro.,* 91 Conn. 146, 99 Atl. 483, 484; *First Universalist Society* v. *Boland,* 155 Mass. 171, 174, 29 N. E. 524, 15 L. R. A. 231. But since no time is named and no event is specified at the expiration or happening of which the estate will come to an end, there is no limitation. This is not, therefore, to be classed as a base or determinable fee, for such an estate is not "an absolute estate nor an estate upon condition, but an estate which is to continue till the happening of a certain event, and then to cease." *First Universalist Society* v. *Boland, supra;* Walsingham's Case, Plowd. 547, 557; *Connecticut Spiritualistic Camp Meeting Ass'n* v. *East Lyme,* 54 Conn. 152, 156, 5 Atl. 849.

But while the covenants on the part of the grantee, his heirs, etc., are not in form conditions, yet taken in connection with the provisions for reentry they are so in effect. The rule is thus stated in *Attorney General* v. *Merrimack Manufacturing Co.,* 14 Gray (Mass.) 586, 612: "The provision for re-entry is therefore the distinctive characteristic of an estate upon condition; and when it is found that by any form of expression the grantor has reserved the right, upon the happening of an event, to re-enter, and thereby revest in himself his former estate, it may be construed as such." Being of such a nature, the breach of a covenant does not of itself and without more cause a defeasance; an entry upon the breach is requisite to revest the estate. *Attorney General* v. *Merrimack Mfg. Co., supra.* The land is held in fee, nevertheless, because of the uncertainty of the event and the possibility that the estate may last forever. 4 Kent Commentaries, 9; 2 Blackstone Commentaries, 109, 110; *Waldron* v. *Gianini,* 6 Hill (N. Y.) 601, 606; *U. S. Pipe Line* v. *Delaware & W. R. R. Co.,* 62 N. J. Law, 254, 41 Atl. 759, 763, 42 L. R. A. 572; *Des Moines City R. Co.* v. *Des Moines,* 183 Iowa, 1261, 159 N. W. 450, 453, 165 N. W. 398, L. R. A. 1918D, 839.

The difference between a base or determinable fee and a fee upon condition is this, that although in either case the estate is a conditional one, in the former the happening of the event is in itself the limit beyond which the estate no longer exists and *ipso facto* the estate is ended when it occurs by operation of law, without requiring any act to be done by anyone; while in the latter, though the event happen upon which the estate

may be defeated, some act is necessary, such as making entry, in order to revest the estate. 2 Washburn, Real Property (6 ed.), para. 970; 4 Kent Comm. (9 ed.) 143.

The significance of this distinction in the instant case lies in the fact that until reentry the grantee, his heirs and assigns are in lawful possession and their estate continues. Hence, since there has been no defeasance, the grantor has obtained no title to the land by the mere act of cutting the timber, which would, if the estate were a base or determinable fee, at once revest the estate. Indeed, it has been held that an entry upon breach of condition is necessary to terminate a so-called "perpetual lease." *Folts* v. *Huntley*, 7 Wend. (N. Y.) 210, 215; see, also, *Smith* v. *Blaisdell*, 17 Vt. 199, 212; *Willard* v. *Benton*, 57 Vt. 286.

So, if this conveyance had been between individuals, and concerned the private property of the grantor, the disposition of which was of his own right, I think it is clear that a conditional fee would have passed. The question now to be considered is whether the same result follows when the premises are so-called public lands, and the grantor a corporation, having by the statute of 1810, the authority only to lease them.

My associates hold, and I entirely agree with them, that a conveyance in perpetuity, with annual rent reserved, and right of reentry for nonpayment, is within the intent and meaning of the statute and is valid and authorized thereunder. I need not repeat here what is so fully and ably stated in the majority opinion concerning the legislative history of this and similar enactments, and the construction placed upon the statutes by the past decisions of this Court.

It must be admitted, however, that these decisions have not been wholly consistent. In *White* v. *Fuller*, 38 Vt. 193, 205, 206, it was held that a conveyance "as long as grass grows and water runs," reserving an adequate annual rent, with right of reentry for nonpayment, was valid under the statutory authority to lease, and the Court said that it was "satisfied that the legislature in conferring the authority to 'lease' such lands had reference to the meaning of the word according to its popular use, rather than to its strict technical definition." In *Society for Propagation, etc.* v. *Sharon*, 28 Vt. 603, and *Lampson* v. *New Haven*, 2 Vt. 14, the same result was reached. But

in *Powers and Peck, Exrs. of Judevine's Estate* v. *Trustees of Caledonia County Grammar School,* 93 Vt. 220, 237, 106 Atl. 836, 838, in construing a statute giving authority "to hold and lease" certain school lands, it is said: "The execution of the power must be such as to give not only a present rent annually for the use contemplated, but such as shall reserve to the future objects in succeeding years, the receipt and full enjoyment yearly of an annual rent by a lease for years (in the legal meaning of that term), reserving to the lessor a reversion, and so conditioned as to bring it within the limitations of that power."

Now surely, a "perpetual lease" is not "a lease for years in the legal meaning of that term." And if the statutory authority to lease includes the giving of a "perpetual lease," it cannot be so restricted in meaning as to permit only the giving of a lease for years. But the language in the Judevine Case may be explained by the wording of the statute involved, which was "to hold and lease," the phrase "to hold" being susceptible of a construction by which the grantor was required to retain an interest in the land, which could be done by a lease for years, followed by a reversion (see page 226 of 93 Vt., 106 Atl. 836, 838). I cannot believe that it was intended to overrule *White* v. *Fuller, Society for Propagation, etc.* v. *Sharon,* and *Lampson* v. *New Haven,* or to depart from the long-established construction of the statutes which my associates have followed in holding this conveyance valid. In fact, in *Trustees of Caledonia County Grammar School* v. *Kent, supra,* 86 Vt. 157, 84 Atl. 26, which involved the same instrument as that in issue in the Judevine Case, the decisions above mentioned were cited with approval. The opinions in the Judevine and Kent Cases were both written by the late Chief Justice Watson.

But although I agree with my associates in holding this conveyance valid, I differ from them in their conclusion that, because it is so, the relationship of landlord and tenant necessarily exists between the grantor and the grantee and the assigns of the latter. We have here a conveyance which is valid under the common law as regards private lands and valid under the statute as regards public lands. If, in one case, the instrument conveys a conditional fee, it is difficult for me to understand why it does not do so in the other; and why exactly the

same language should be construed to mean one thing in one instance, and the opposite in the other.

The various decisions which have upheld this sort of conveyance have called it a "perpetual lease." Of course this is a self-contradictory expression, because a lease cannot be perpetual, but must be for a term of definite duration, at the expiration of which the possession of the premises reverts to the lessor. 2 Blackstone, Comm. 143. By a lease one grants an interest less than his own reserving to himself a reversion. *Powers and Peck, Exrs. of Judevine's Estate* v. *Trustees of Caledonia County Grammar School, supra,* 93 Vt. at page 239, 106 Atl. 836. Such a reversion is a necessary element in the relation of lessor and lessee. *Trustees of Caledonia County Grammar School* v. *Kent, supra,* 86 Vt. at page 156, 84 Atl. 26; *Stephenson* v. *Haines,* 16 Ohio St. 478, 486; *Ocean Front Improvement Co.* v. *Ocean City Gardens Co.,* 89 N. J. Eq. 18, 103 Atl. 419, 421; *Craig* v. *Summers,* 47 Minn. 189, 49 N. W. 742, 15 L. R. A. 236, 239. It is only by virtue of this interest in the premises that the landlord has a right of action against anyone, whether tenant or third person, who commits an act which causes an injury to the premises, and the impairment of the reversionary estate is the basis of such action. *Higgins* v. *Farnsworth,* 48 Vt. 512, 514; *Wilcox* v. *Cate,* 65 Vt. 478, 481, 26 Atl. 1105; *Cushing* v. *Kenfield,* 5 Allen (Mass.) 307, 308; *Hastings* v. *Livermore,* 7 Gray (Mass.) 194, 198. And the cutting of timber on the demised premises has been held to constitute such an injury. *Bulkley* v. *Dolbeare,* 7 Conn. 232, 234.

It would seem to follow that if there is no reversion remaining in the grantor there cannot be a leasehold estate; and, if the reversion is nonexistent, there can be no right of action for an injury to it. There can be no reversion after the grant of a fee simple. *Haynes* v. *Bourn,* 42 Vt. 686, 690; *Powers and Peck, Exrs. of Judevine's Estate* v. *Trustees of Caledonia County Grammar School, supra.* If it is a base or determinable fee, there is only a possibility of reverter. *First Universalist Society* v. *Boland, supra; Institution for Savings, etc.* v. *Home, etc.,* 244 Mass. 583, 139 N. E. 301, 302; *Pond* v. *Douglass,* 106 Me. 85, 75 Atl. 320, 322; *Lyford* v. *Laconia,* 75 N. H. 220, 72 Atl. 1085, 1089, 22 L. R. A. (N. S.) 1062, 139 A. S. R. 680; *Slegel* v. *Herbine,* 148 Pa. 236, 23 Atl. 996, 999, 15 L. R. A.

547; *Loomis* v. *G. F. Heublein & Bro., supra; Hart* v. *Lake*, 273 Ill. 60, 112 N. E. 286, 289; *Upington* v. *Corrigan*, 151 N. Y. 143, 45 N. E. 359, 37 L. R. A. 794, 797; Zane, "Determinable Fees in American Jurisdiction," 17 Harv. Law Rev. 297, 299. If it is a fee upon condition, there is not even such possibility for the right of reentry is a mere right of action, and, if enforced, the grantor is in by the forfeiture and not by reversion. *Nicoll* v. *N. Y. & Erie R. R. Co.*, 12 N. Y. 121, 139; *DePeyster* v. *Michael*, 6 N. Y. 467, 468, 57 A. D. 470; *Hudson Tunnel Co.* v. *Attorney General*, 27 N. J. Eq., 573, 578; *Ocean Front Improvement Co.* v. *Ocean City Garden Co.*, 89 N. J. Eq. 18, 103 Atl. 419, 421; *Craig* v. *Summers*, 47 Minn. 189, 49 N. W. 472, 15 L. R. A. 236, 239; Gray, Rule against Perpetuities (3 ed.), para 30.

In *Powers and Peck, Exrs. of Judevine's Estate* v. *Trustees of Caledonia County Grammar School, supra,* it was held that there could be no reversion when the conveyance was in perpetuity with a gross sum paid as consideration for the transfer, and no right of reentry reserved. So far as the lack of a reversion is concerned this case is not distinguishable from the instant one, for the thing which renders the existence of a reversion impossible is the perpetuity. To call this instrument a lease is only to beg the question. To do so, does not confer upon the parties the rights and liabilities of landlord and tenant to a greater extent than the instrument itself provides. The magic of the name does not cause a reversion to materialize out of nothing. Like Glendower one may call spirits from the vasty deep, but there must not be forgotten the pertinent inquiry of Hotspur, whether they will come when called.

This case should be decided, I believe, not by taking refuge behind a name, but by an analysis of the true nature of the conveyance. It is said in *Mendenhall* v. *First New Church Society*, 177 Ind. 336, 342, 98 N. E. 57, 60, that "the character of a written instrument is to be determined from the real nature of the transaction, and not from the form nor the name which the parties apply to the instrument." Such an analysis shows that the grantee took an estate in perpetuity with a condition annexed to it, and since, admittedly this is valid under the statute, I fail to understand why it should be construed to be something else than it really is, simply because it is called

that. Why should something which plainly is not therein, either by the terms of the instrument or by its legal effect, be placed there by judicial construction? Why should a conveyance in perpetuity be held to carry the incident of a reversion?

Since there can be no reversion here, there can be no right of action for an injury to it. The remedy of the plaintiff is by reentry for breach of condition, or by an action for breach of covenant against the person bound thereby. The defendant who has purchased and cut the timber has obtained title to it, unaffected by the fact that the person from whom he bought was under a contractual obligation not to cut or permit the cutting. The principle is the same as where a lessee for years sells the crops to a third person, in violation of a provision in the lease that he shall not dispose of them. If no lien has been reserved, the remedy of the lessor is against the lessee upon the agreement, and not against the purchaser. *O'Brien* v. *Waite*, 104 Vt. 181, 157 Atl. 828, decided at the January, 1932, Term of this Court, and cases therein cited.

It is said, however, that if this is a conveyance in fee, being of public lands it is void. Since it is held to be valid, this amounts to saying that, because it is valid, it cannot be a fee. Of course the validity of the conveyance for this reason cannot change its true character. It is what it is, valid or invalid. It is true that it has been said repeatedly by this Court that a conveyance in fee of public lands is void, but I submit that an analysis of the decisions which have announced this principle will show that it has been restricted in application to conveyances of a fee simple absolute. In *Trustees of Caledonia County Grammar School* v. *Kent, supra*, and again in *Powers and Peck, Executors of Judevine's Estate* v. *Trustees of Caledonia County Grammar School, supra*, the conveyance was in perpetuity, the consideration was the payment of a gross sum of money, and there was no provision for a reentry. There can be no dispute as to the character of this transaction. It was a fee simple absolute and nothing else. In *Capen's Admr.* v. *Sheldon*, 78 Vt. 39, 61 Atl. 864, there was a deed of a minister lot executed in accordance with a vote of the town, purporting to convey "in fee for $1,000." Here was an absolute conveyance, without condition, which was a fee simple absolute. In *Society for Propagation, etc.* v. *Sharon, supra*, the conveyance was "as long

as water runs and grass grows * * * * yielding and paying as rent one barley corn annually, if demanded." There was no provision for reentry. In holding this conveyance void, the Court said (page 616 of 28 Vt.) that it was a lease only in form, but purported to convey the fee because no rent was reserved for the nonpayment of which an ejectment could be maintained; there was no duty upon the grantee to surrender the premises upon any condition whatever; and the annual rent of one barley corn payable only if demanded was nominal and the maxim *de minimis* might well apply. Plainly, the estate here attempted to be conveyed was a fee simple absolute. In *Williams* v. *Goddard*, 8 Vt. 492, the validity of a conveyance in fee of a minister lot, by the first settled minister of the town, depended upon whether the title to the lot had vested in the minister under the charter of the town. But the conveyance was an absolute one. In *Lampson* v. *New Haven, supra,* a glebe lot was conveyed "as long as water runs and grass grows" and the consideration was the grantee's promissory note payable on or before 100 years after date, with interest annually, and the grantee gave a mortgage upon the lot and upon another lot to secure its payment. No right of reentry is mentioned. Here, again the estate described was a fee simple absolute. In *Bush* v. *Whitney,* 1 D. Chip. 369, wherein it was said that the conveyance of a glebe lot in fee was void, nothing appears concerning the terms of the instrument, and so the case can hardly be considered an authority one way or the other upon the point I am discussing.

In fact, if the position of the majority is accepted, it is difficult to avoid impalement upon the horn of a dilemma. On the one hand it is said, broadly, that a conveyance in fee of public lands is void; on the other, that a conveyance of what, at common law, would be a conditional fee is valid. The only way of escape, as I see it, is to recognize the fact that the principle has not been, and is not to be, applied where the fee is subject to a right of reentry for breach of condition. That this distinction has been observed in practice clearly appears in *Lampson* v. *New Haven, supra,* wherein after announcing the invalidity of the instrument previously executed, a decree was entered which permitted the execution of a "perpetual lease" of the glebe lot, reserving a reasonable annual rent with right of reentry

for nonpayment; and in *White* v. *Fuller, supra,* 38 Vt. 206, wherein it is said that ''we have been unable to find any case in which a lease creating a tenancy and reserving an adequate annual rent, with a right of re-entry on the non-payment of the rent or non-performance of other conditions has been adjudged to be void on account of being perpetual in its duration.'' True enough, these decisions use the word ''lease'' but, as I have said before, the name does not matter when we look to the substance and real character of the transaction; and, besides, we have the warning in *White* v. *Fuller* that the word is not used in its technical but in its popular meaning.

In what I have said, I have treated the covenant against cutting the timber as a proper condition. Whether, if this is a fee, the covenant is valid is another question upon which I do not think it is necessary to dwell. It is enough to call attention to *DePeyster* v. *Michael, supra,* 6 N. Y. at pages 491, 493, 57 A. D. 470, wherein it is said that, in a conveyance in fee, a condition that the grantee shall not commit waste or take the profits is void, ''the reason being that a fee simple estate and a restraint upon its alienation cannot in their nature coexist. The ownership of the fee cannot exist in one person, while the ownership of the right of alienation and of its profits exists in a different person.'' This is a well understood rule of law, and further citation of authority would be superfluous.

I do not share in the forebodings of my brethren that a failure to construe such a conveyance as a lease ''would unsettle and destroy many titles hitherto believed to be good.'' The purpose in giving ''perpetual leases'' of public lands was, as the majority opinion points out, to encourage the clearing of forest land and its use for agriculture. Settlers would not accept such conveyances unless they were assured that they and their children would enjoy the fruits of their labors. ''This result,'' say my associates, ''and a reasonable and adequate rent for the lands could be secured only by long term leases.'' The purpose is as well fulfilled if the conveyances in perpetuity are construed to pass a conditional fee as if they are construed to pass a leasehold. In neither case can the rent be increased during the term. In neither case can the grantor repossess itself of the premises except as provided therein. There is, it seems to me, far more danger that the titles of the grantees

will be disturbed by holding that the conveyances are leases, than that the titles of the grantors will be affected by saying that they pass a conditional fee, even though the grantors may have believed, when they executed the instrument, that they meant something different than their language stated.

I would reverse the judgment, and enter judgment for the defendant.